THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH GORDON, Plaintiff in Error.

*Opinion filed October 24, 1916.*

1. CONSTITUTIONAL LAW—*a law is not local or special because applicable only where adopted by vote.* A law is not local or special because it provides that it can only be in force in any city, village or incorporated town that may adopt it by vote of the people, nor because it is only operative in a single place or territory if it operates alike upon all within that territory.

2. SAME—*City Election law is not unconstitutional because it provides different penalties from the general Election law.* The City Election law is not unconstitutional because it provides a punishment by imprisonment in the penitentiary for the commission of certain offenses which under the general Election law are merely misdemeanors and punishable as such. (*People* v. *Hoffman,* 116 Ill. 587, adhered to.)

3. SAME—*what is due process of law guaranteed by Federal constitution.* The due process of law guaranteed by the Federal constitution is the equal protection of the laws, secured by laws operating on all alike and not subjecting the individual to the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice.

4. SAME—*Federal constitution permits reasonable classification for the purpose of legislation.* While under the doctrine of the equal protection of the laws class legislation is prohibited by the Federal constitution there is no prohibition against a reasonable classification for the purpose of legislation, but the statute enacted must be uniform in its operation on all the members of the class to which it is made applicable.

5. SAME—*rule of construction of statute involving a classification.* A statute establishing a classification is not unconstitutional merely because it results in some practical inequalities, and all reasonable doubts are to be resolved in favor of upholding the validity of such legislation.

6. SAME—*question of classification is primarily for the State legislature.* The provision of the Federal constitution regarding the equal protection of the laws allows the State, in making classifications for laws governing matters within its jurisdiction, a wide range of discretion, and the question of classification is primarily for the State legislature, becoming a judicial question only when the legislative action is clearly unreasonable.

7. STARE DECISIS—*when doctrine of stare decisis should be applied.* In considering the constitutionality of a statute which has been in force in various municipalities for many years and has previously been held constitutional the Supreme Court will apply the doctrine o*f stare decisis,* where to hold a particular provision unconstitutional will overthrow a long line of decisions and leave the entire act without force.

DUNN, CARTWRIGHT and DUNCAN, JJ., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding.

LOUIS GREENBERG, for plaintiff in error.

P. J. LUCEY, Attorney General, JOHN E. NORTHUP, Special State's Attorney, and ARTHUR R. ROY, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

The plaintiff in error was indicted, tried and convicted in the criminal court of Cook county for fraudulently changing and altering an official ballot during the canvass of ballots in the sixteenth precinct of the eighteenth ward of the city of Chicago, at the general election held November 5, 1912. Motions for new trial and in arrest of judgment were overruled and judgment was entered on the verdict. This writ of error is sued out to review that judgment.

No bill of exceptions is found in the record, and the only error urged as ground for reversal is that the section of the statute under which the court sentenced plaintiff in error to the penitentiary is void, as in contravention of the State constitution and of the fourteenth amendment to the Federal constitution. Counsel differ as to the section of the City Election law under which plaintiff in error was indicted, his counsel insisting that it was under section 12 of article 6, while counsel for the State insist that it was under section 6 of that article. In our judgment the indict-

ment is based on said section 6, but it is immaterial whether it was under section 6 or section 12, for if one section is held constitutional, we see no reason why the other, for like reasons, should not also be so held.

The City Election law provides that it shall be in force in cities, villages and incorporated towns only by vote of the electors in the manner provided by the act. It was adopted by the voters of the city of Chicago in 1885 and has been in force in that city since that year. Section 6 of article 6 of said City Election law provides that if any judge of election or other officer or person shall fraudulently, during the canvassing of the ballots, change or alter any ballot, he shall be punished by imprisonment in the penitentiary for not less than one nor more than five years. (Hurd's Stat. 1916, p. 1171.) The only provision of the general Election law as to punishment for alteration of a ballot is section 82, which declares that whoever changes a ballot with intent to deprive an elector of voting for such person as he intended, shall be fined not exceeding $1000 or be imprisoned in the county jail not exceeding one year, or both. (Hurd's Stat. 1916, p. 1119.) It is therefore earnestly insisted that the City Election law is special legislation, arbitrary and unreasonable, and therefore unconstitutional under both the State and Federal constitutions.

The City Election law was held constitutional in *People v. Hoffman,* 116 Ill. 587. A reading of the majority and dissenting opinions in that case demonstrates clearly that practically every question now urged against the constitutionality of the law as to its being special legislation, arbitrary and unreasonable in its provisions was raised and considered by the court in that case. The briefs in that case urged its unconstitutionality on the very ground urged here,—that is, that it provided punishments for the same or similar acts different from those provided by the general Election law. The opinion of the court in that case held that the act was valid and not in contravention of any con-

stitutional provision, and that it was not a local or special law within the meaning of the constitution, saying (p. 597) : "Whether laws are general or not does not depend upon the number of those within the scope of their operation. They are general, 'not because they operate upon every person in the State, for they do not, but because every person who is brought within the relations and circumstances provided for is affected by the laws.' Nor is it necessary, in order to make a statute general, that 'it should be equally applicable to all parts of the State. It is sufficient if it extends to all persons doing or omitting to do an act within the territorial limits described in the statute.' (*People* v. *Wright,* 70 Ill. 388; *People* v. *Cooper,* 83 id. 585.) This Election law is not local or special because of the limited number of cities, towns and villages which may have adopted it. It may rather be said of it that it is general because of the possibility that all the cities, towns and villages in the State may accept its provisions if they choose." That the court then had in mind these very differences in punishment between the City Election law and the general Election law for the same acts is obvious not only from what we have just quoted, which necessarily bears on the question here involved, but from the entire discussion in the opinion of the court. The conclusion that the opinion intended to pass directly on the questions we are considering is rendered absolutely certain, if not so before, by considering the court's opinion in connection with the opinion of the minority, for the dissenting opinion time and again called attention to the principles involved in the arguments here urged upon us, and particularly referred to the very sections of the statute now under consideration as a reason for holding the act to be special legislation. The dissenting opinion, after enumerating numerous differences between the City Election law and the general Election law, calling attention, among other things, to the fact that the polls under these two laws open and close at different hours; that

274 — 30

the registration provisions differ in practically every respect; that the methods of appointing the judges and clerks are in nowise similar, continued (p. 619) : "Under the general law the offenses of illegal voting, bribery, etc., are punishable by fine or imprisonment in the county jail; by this act these offenses are punishable by confinement in the penitentiary. Under the general law the violation by judges of election of certain prescribed duties is punishable by fine or imprisonment in the county jail; by this act the same offenses are punishable by confinement in the penitentiary. There are still other matters of dissimilarity between the provisions of the general law and those of this act equally as marked, but these are sufficient to show that this act is in no sense supplementary to the general law, and that it and the general law are not applicable to different conditions and states of fact, but that they contain radically different systems of law upon the same subject matter." Again, on page 620, the dissenting opinion says: "I cannot believe that a law arbitrarily classifying the subject matter of a law and applying and enforcing different rules in conformity with such arbitrary classification is general or that it can be correctly denominated otherwise than local or special. To justify classification the difference must be in the thing itself which forms the subject of legislation, and it must be substantial and not simply fanciful." On page 621 we also find this in the dissent: "It is impossible to state a valid reason why illegal voting and malfeasance in office by judges of election are worse offenses in the city of Chicago or the town of Lake than they are in the village of Hyde Park, or, for that matter, in Peoria, Quincy, Bloomington or Springfield, or in the rural voting districts." Again, on page 627: "What can there possibly be in the circumstances affecting it to justify the distinction that if an illegal vote be cast or an election officer be guilty of malfeasance in office in one voting precinct in Cook county the person so guilty shall be punished by confinement in the penitentiary, and yet if

an illegal vote be cast or an election officer be guilty of the same malfeasance in office, under precisely the same conditions and circumstances and in precisely the same way, at an election on the same day for the same officers in another precinct in Cook county, he shall be punished only by fine, or by fine and imprisonment in the county jail?"

It is unnecessary to quote at greater length from the dissenting opinion in order to emphasize the fact that practically its entire basis was the very sections of the law which are here urged as unconstitutional. If the reasons urged here and urged in the dissenting opinion in the *Hoffman case* were upheld it would nullify the force and effect of the entire Election law. The fundamental principle of this act centers about the registration requirements. Under this act the requirements are mandatory that the voter must register before the day of election in order to be qualified to vote; under the general act no such requirement is made. Under the general act, while there are provisions for registration, a voter can vote even though he is not registered before the day of election. This act provides in detail for preliminary registration and for a canvass of the district and the method of sending suspect notices prior to the day of election, in order that only those who are legally entitled to vote shall remain on the registration books. Some two score or more different acts that interfere with the proper registration of voters are made punishable by the City Election act which are not specifically covered or provided for under the general Registration law. Numerous penalties for the violation of its provisions, either by the judges and clerks of election or by other persons, are provided in the City Election law which are in no way touched upon by the general law. The opinion of the court in the *Hoffman case* discusses at length the various requirements of the act as to registration and holds them constitutional. If the argument of counsel for plaintiff in error as to the invalidity of the section of the Election law here involved were upheld, and

if this section of the act were held unconstitutional because it provides a different punishment for altering a ballot than is provided by the general act, by the same line of reasoning it follows that all the other provisions of the City Election law which require certain things to be done with reference to registration, and every provision for a penalty different from that provided by the general Registration law or providing a penalty where no penalty has been provided by the general Registration law, must also be held unconstitutional. Such a decision would practically nullify the main features of the City Election act. If the provisions of the law as to penalties are invalid the law itself is without force. Blackstone says that "of all the parts of a law the most effectual is the vindicatory, for it is but lost labor to say, 'Do this or avoid that,' unless we also declare, 'This shall be the consequence of your non-compliance.' We must therefore observe that the main strength and force of a law consists in the penalty annexed to it. Herein is to be found the principal obligation of human laws." (1 Blackstone's Com.—Sharswood's ed.—*57.) Hamilton, in the Federalist, in his paper No. 15 on Governmental Functions, states (p. 143) : "It is essential to the idea of a law that it be attended with a sanction, or, in other words, a penalty or punishment for disobedience. If there be no penalty annexed to disobedience the resolutions or commands which pretend to be laws will, in fact, amount to nothing more than advice or recommendation." Substantially all the numerous penalties found in the City Election law are either different from the penalties that apply to similar acts under the general law, or they are penalties for acts which are not mentioned in the general law. It is inconceivable that this court would have held this law constitutional without intending to hold the penalty features of the act constitutional.

The case of *People* v. *Hoffman, supra,* is one of the leading cases, not only in this State but in the entire country, as to registration laws and as to the question of local

and special legislation with reference to election laws. It is so recognized in all jurisdictions and by all writers on the subject. It has always been quoted with approval by this court on these subjects, and perhaps more often quoted than any other decision of this court as to whether certain legislation was local or special, and therefore unconstitutional. A few, only, of the cases where the principles of this decision have been sanctioned do we deem it necessary to refer to.

In *People* v. *Wanek,* 241 Ill. 529, the registration provisions of this act and the general act were under consideration. The court said (p. 533): "The first statute referred to was passed in 1885 and the subsequent statute was passed in 1887, since which time both statutes have been held constitutional and enforced. (*People* v. *Hoffman,* 116 Ill. 587; *Wetherell* v. *Devine,* id. 631; *Snowball* v. *People,* 147 id. 260.) We think this court is therefore committed to the view that the City Election law is constitutional. If we were at this late date to hold that the registration provision of the City Election law was unconstitutional in discriminating between voters of different parts of the same political subdivision, as contended by appellant, * * * then we would be forced to hold that the City Election law only applied to city elections and was unconstitutional as to all elections where the election was not confined to the territorial limits where said law was in force. * * * Our conclusion is that the City Election law is constitutional in its registration feature."

In *Bolles* v. *Prince,* 250 Ill. 36, the court considered and construed certain provisions of the City Election law, and said (p. 38): "The demurrer raised several constitutional objections to the City Election act, most of which are not insisted upon here, and would, in any event, be unavailing in view of the decisions in *People* v. *Hoffman,* 116 Ill. 587, *Wetherell* v. *Devine,* id. 631, and *People* v. *Wanek,* 241 id. 529." While the opinion itself does not show the fact, the

record in the case just quoted from does show that the demurrer raised the question as to the City Election law being unconstitutional because it was local and special legislation.

It is argued that even though the City Election act might reasonably be held constitutional if it applied only to cities of a certain size, making the population of the cities the basis of the classification, it being conceded by this argument that experience has shown that stricter rules and regulations are necessary for controlling elections in the larger cities and towns than in the smaller ones or in the rural districts, yet this law provides that it can be in force in any city, village or incorporated town that may adopt it by vote of the people, and that therefore its adoption does not depend in any way upon the amount of population. In view of the numerous decisions of this court that a law is not local or special because of such a provision, we cannot understand how there can be any force in this argument. This very question was considered and stated to be without merit in the opinion in *People* v. *Hoffman, supra,* the court saying (p. 596) : "If the act for the incorporation of cities and villages is a general law in spite of the fact that by its terms it is restricted in its operation to those cities and villages, only, which vote to adopt it, then the Election law now under consideration cannot be considered local or special because it contains a similar restriction." The *Hoffman case* on this point has been quoted with approval many times by this court. In *West Chicago Park Comrs.* v. *McMullen,* 134 Ill. 170, the court held a law applying to the parks in only one city constitutional, saying (p. 176) : "A law may be general and yet be operative in a single place. It is not requisite that it should be presently applicable to every person or to every city within the State. The general law for the incorporation of cities, towns and villages, until it was adopted by some city, town or village, was inoperative, having no application anywhere. * * * So the City Election law, held in *People* v. *Hoffman,* 116 Ill. 587, to be a valid

enactment, applies only to such cities as may adopt the mode of conducting elections therein prescribed." Again, in *People* v. *McBride*, 234 Ill. 146, where the constitutionality of the Local Option law was under consideration, this court said (p. 177) : "From the very beginning it has been held that the legislature have power to pass a law the operation of which depends upon the happening of a contingency or future event, and that such contingency may be an affirmative vote of the people to be affected by it,"—citing *People* v. *Hoffman, supra,* among other decisions. In *People* v. *Edmands,* 252 Ill. 108, where the validity of the act as to the commission form of government of cities was under consideration, the court said (p. 118) : "It does not violate that section because of the provision that it is only to become effective in municipalities which may adopt it by a vote,"—citing *People* v. *Hoffman, supra,* among other cases, as upholding this doctrine. In *Tower* v. *Glos,* 256 Ill. 121, the constitutionality of the Torrens law as to its being local or special was questioned, and the court said: "All counties may adopt it, and when it is adopted it applies to all counties alike. Its application depends upon the vote of the people, but not its constitutionality. Numerous acts having similar provisions have been before this court and have been upheld,"—citing *People* v. *Hoffman* and other cases. See, also, to the same effect, *People* v. *Kipley,* 171 Ill. 44, and *People* v. *Simon,* 176 id. 165.

The following are a few of the many decisions in which this court has quoted with approval the reasoning in *People* v. *Hoffman, supra,* as to laws not being local or special because they apply only to a given locality and not to the entire State: *Cummings* v. *City of Chicago,* 144 Ill. 563; *Trausch* v. *County of Cook,* 147 id. 534; *People* v. *Onahan,* 170 id. 449; *People* v. *Butler Street Foundry Co.* 201 id. 236; *Pettibone* v. *West Chicago Park Comrs.* 215 id. 304; *People* v. *Kewanee Light Co.* 262 id. 255; *Martens* v. *Brady,* 264 id. 178.

Option legislation upon proper subjects is universally upheld and declared not to be special legislation, and while the majority of the decisions on this subject are with reference to liquor laws, there are many decisions upholding such legislation with reference to numerous other matters, especially those affecting local or municipal government. (*Adams* v. *Beloit,* 47 L. R. A. (Wis.) 441; *State* v. *Hoagland,* 51 N. J. L. 62; *Gordon* v. *State,* 48 Ohio St. 607.) Thus, laws providing a different rate of assessment for local improvements, (*Burnett* v. *Commonwealth,* 169 Mass. 417,) and different maximum rates to be charged by grain elevators, (*Budd* v. *New York,* 143 U. S. 517,) have been upheld. This court has repeatedly had occasion to refer to this question in considering liquor laws. In *People* v. *Kaelber,* 253 Ill. 552, we said (p. 554) : "The requirement that laws shall be general does not mean that every statute shall have effect upon every individual and in every locality in the State. Such a construction is impossible. * * * There are numerous statutes which prohibit the sale of intoxicating liquor to certain persons at certain times, in certain places. * * * The sale of intoxicating liquor is prohibited at all times in some places and at some times in all places. We have recognized the right of a city council to prohibit the sale in certain parts of the city while permitting it in other parts. (*People* v. *Cregier,* 138 Ill. 401; *Moore* v. *Mayor of Danville,* 232 id. 307.) The act is not local merely because one soldiers' and sailors' home, only, is maintained by the State and the act can therefore operate in but one place. An act which is general in its nature and uniform in its operation upon all persons coming within its scope is a general law. [Citing *People* v. *Hoffman,* and other cases.] A law is general, not because it embraces all of the governed, but because it may embrace all when they are similarly situated and come within its provisions." To the same effect as to liquor legislation is *People* v. *McBride, supra.* This court in *Reynolds* v. *Town of Foster,* 89 Ill. 257, held

that a road and bridge law which applied to all counties in
the State acting under township organization, giving police
magistrates and justices of the peace jurisdiction of com-
plaints against persons for refusal or neglect to work when
warned to do so, but did not apply in counties not under
township organization, was not local or special in the cor-
rect sense of the use of those terms; that there was no
constitutional prohibition against the legislature providing
for summary convictions in counties under township organi-
zation, provided the act applied and was operative in all
such counties. The constitutional provision as to due proc-
ess of law has rarely, if ever, been held to prohibit legisla-
tion limited as to the territory within which it operates.
All that is required is that such laws shall be general in
their application within that territory. (6 R. C. L. 388.)
And this rule appears to be universal as to election or pri-
mary laws applying only to specified territory. (9 R. C. L.
983.) "A State or its agencies may prescribe different reg-
istration laws, a right to punish as a crime or misdemeanor
an act which is not punishable if done in another district,"
etc. (8 Cyc. 1060.)

There is no need, however, to cite or add further au-
thorities on this question, as this court has always held a
law not local or special when it takes effect only in such
municipalities as may adopt it by a vote, and also not local
or special, but general, when it is only operative in a single
place or territory, if it operates alike upon all within that
territory. We have repeatedly held the law here in ques-
tion valid and constitutional with reference to both of these
questions.

The decisions in other jurisdictions and the text book
writers, in commenting on local or special legislation with
reference to registration and election matters, as well as
other subjects connected with laws that apply only to par-
ticular territories, have often cited *People* v. *Hoffman, su-
pra,* and usually the rules laid down in that decision with

reference to general or special laws have been quoted with approval. While sometimes they have been cited with disapproval, never, so far as we are advised, has any court or text writer questioned the fact that under that decision such legislation would be constitutional even though it provided a penalty for the violation of such an act other and different from the penalties that applied to the same or similar acts in other parts of the State. The following are some of these authorities: *Adams* v. *Beloit,* 47 L. R. A. (Wis.) 441; *Blair* v. *Ridgeley,* 97 Am. Dec. (Mo.) 248, note 266; *State* v. *George,* 29 Am. St. Rep. (Ore.) 586; *People* v. *Mosher,* 79 id. (N. Y.) 552, note 561; *Attorney General* v. *Common Council,* 18 id. (Mich.) 458; *Ladd* v. *Holmes,* 91 id. (Ore.) 457; *State* v. *Blake,* 25 L. R. A. (N. J.) 480, note; *State* v. *Sargent,* 27 id. [N. S.] (Iowa,) 719; Ann. Cas. (1913) *b,* 17, and note; 9 R. C. L. 1036-1038, notes; 1 Dillon on Mun. Corp. (5th ed.) 688, and note.

Every time this City Election law or any of its provisions have come before this court it has been assumed, if not decided, that the law was not unconstitutional in that it required different duties and authorized different punishments from the general Election law. In *Sherman* v. *People,* 210 Ill. 552, this court held that the provisions of the City Election law which covered and controlled the appointment of judges and clerks of election and made them officers of the county court and punishable for contempt by that court for violation of their duties as judges and clerks of election were constitutional, quoting with approval on this question the reasoning in *People* v. *Hoffman, supra.* This court had theretofore held in *Graham* v. *People,* 135 Ill. 442, that the county court had no power to punish for contempt judges and clerks of election under the Primary law in force when the decision was handed down, in 1890. This conclusion was reached in that decision because the judges and clerks were not appointed and did not serve under the authority of the City Election law here under con-

sideration. In *Lionetti* v. *People,* 183 Ill. 253, the court
affirmed a judgment where the plaintiff in error had been
convicted of felony and sentenced to the penitentiary for
illegally voting in the name of another person, under sec-
tion 2 of article 6 of the City Election law, (the identical
article of the City Election law that we are now consider-
ing,) though the only provision for punishment under the
general Election law for such act was the same provision of
the general law under which plaintiff in error could be pun-
ished in this case if he were found guilty under that general
law. It is true that in the opinion of the court in that case
the constitutionality of the act was not considered or de-
cided, but counsel and the court all assumed, apparently,
that the constitutionality of the act, in view of the former
decisions of the court, could not be questioned.

Counsel's most earnest insistence, however, as to the in-
validity of this act seems to be that it is in contravention
of the fourteenth amendment of the Federal constitution.
The due process of law guaranteed by the Federal constitu-
tion has been defined, in terms, as the equal protection of
the laws,—that is, as being secured by laws operating on
all alike, and not subjecting the individual to the arbitrary
exercise of the powers of government, unrestrained by the
established principles of private right and distributive jus-
tice. (6 R. C. L. 372; *Caldwell* v. *Texas,* 137 U. S. 692.)
While under the doctrine of the equal protection of the
laws class legislation is prohibited by the Federal constitu-
tion, there is no prohibition against a reasonable classifica-
tion of persons and things for the purpose of legislation.
(*Gulf, California and Santa Fe Railway Co.* v. *Ellis,* 165
U. S. 150; 6 R. C. L. 374.) Such classification must not
be capricious or arbitrary, but must be reasonable and natu-
ral and based upon some natural principle of public policy;
but if the classification is not wholly unreasonable and ar-
bitrary and the statute is uniform in its operation on all
the members of the class to which it is made applicable, no

one is denied the equal protection of the laws guaranteed by the Federal constitution. (*American Sugar Refining Co. v. Louisiana,* 179 U. S. 89; 6 R. C. L. 378, 379.) As in all the other cases involving the validity of statutes, all reasonable doubts are to be resolved in favor of upholding the validity of legislation establishing a classification. Such a law is not unconstitutional because it results in some practical inequalities. (*Minnesota Iron Co. v. Kline,* 199 U. S. 593; *Orient Ins. Co. v. Daggs,* 172 id. 557.) In the exercise of its power to make classifications for the purpose of enacting laws over matters within its jurisdiction the State is permitted a wide range of discretion. The question of classification is primarily for the State legislature, and only becomes a judicial question when the legislative action is clearly unreasonable. (*Magoun v. Illinois Trust, etc. Bank,* 170 U. S. 283.) The "due process of law" provision of the Federal constitution is not necessarily infringed by special legislation or by legislative classification of persons or things. That provision merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions. (*Central Lumber Co. v. South Dakota,* 226 U. S. 157.) The provisions of the various State constitutions prohibiting special or local legislation where a general law can be made applicable are usually held to prohibit class legislation of the character prohibited by the clauses of the Federal constitution requiring equal protection of the laws. (6 R. C. L. 420.)

Counsel for plaintiff in error quotes from and relies strongly on certain decisions of the United States Supreme Court discussing this question, among others the court's statement in *Barbier v. Connolly,* 113 U. S. 27, (p. 31,) that "the fourteenth amendment, in declaring that no State 'shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary depri-

vation of life or liberty or arbitrary spoliation of property, but that equal protection and security should be given to all, under like circumstances, in the enjoyment of their personal and civil rights, * * * and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses." That decision was considering the validity of a municipal ordinance of the city of San Francisco which prohibited washing and ironing in public laundries and wash-houses, within defined territorial limits, within certain specified hours of the day. It held the municipal ordinance valid as a police regulation and not prohibited by the provisions of the fourteenth amendment. The opinion also stated (p. 31) that this amendment was not designed to interfere with the police power "to promote the health, peace, morals, education and good order of the people. * * * From the very necessities of society, legislation of a special character * * * must often be had in certain districts, such as for draining marshes and irrigating arid plains." The opinion continued that regulations for these purposes might press more heavily upon one than another, and that though such legislation may often be special in its character, such acts do not furnish just grounds of complaint if they operate alike upon all "persons and property under like circumstances and conditions."

Another of the decisions specially relied on by counsel is *Connolly* v. *Union Pipe Co.* 184 U. S. 540. The court in that case held unconstitutional an act of the Illinois legislature because it discriminated in favor of agricultural products or live stock in the hands of the producer or raiser, as being arbitrary and not based upon any reasonable classification. The court, however, in discussing the provisions of the fourteenth amendment as to classification, said (p. 558) : "What may be regarded as a denial of the equal protection of the laws is a question not always easily determined, as the decisions of this court and of the high-

est courts of the States will show. It is sometimes difficult to show that a State enactment, having its source in a power not controverted, infringes rights protected by the national constitution." A reading of the decisions of the various courts, including our own, on this question of due process of law and special legislation, demonstrates beyond peradventure that this statement of Mr. Justice Harlan just quoted, as to the difficulty in deciding whether a given law is in contravention of the constitution, was not too greatly emphasized by him.

It seems to us, however, that the United States Supreme Court has relieved us of the necessity of deciding whether or not the provisions of the City Election law here under consideration contravene the provisions of the fourteenth amendment. In *Missouri* v. *Lewis,* 101 U. S. 22, the court said (p. 31) : "There is nothing in the constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties and the common law and its method of procedure for the rest of the State, there is nothing in the constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the fourteenth amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there he could not justly complain of a violation of the clause referred to, for, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances. The fourteenth amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great

diversities in these respects may exist in two States sepa-
rated only by an imaginary line.   *   *   *   If diversities
of laws and judicial proceedings may exist in the several
States without violating the equality clause in the fourteenth
amendment, there is no solid reason why there may not be
such diversities in different parts of the same State.   A uni-
formity which is not essential as regards different States
cannot be essential as regards different parts of a State,
provided that in each and all there is no infraction of the
constitutional provision.   Diversities which are allowable in
different States are allowable in different parts of the same
State."   This is perhaps the leading case on this subject in
the United States Supreme Court.   It has been quoted again
and again by that court, and always with approval.   If it
be said that this doctrine was laid down with reference to
procedure and not with reference to different methods of
punishment, it may be answered that in later cases where
the doctrine of the *Lewis case* has been sanctioned it has
been applied to different penalties as well as to different
procedure.

The case most nearly in point on facts and principle to
the one here before us is *Mason* v. *Missouri,* 179 U. S. 328.
There the court was considering the constitutionality of an
election law in the State of Missouri.   The election law clas-
sified cities with reference to their population and inflicted
severe penalties for the violation of the statute similar to
the provisions of the election law here under considera-
tion.   The elections laws of Missouri there under consid-
eration were different in cities of from 100,000 to 300,000
inhabitants from the laws in cities of over 300,000, and in
both of these classifications such laws were different from
those for the State at large.   Moreover, certain acts were
held to be crimes if committed in one locality in the State
but were not crimes when committed in other parts of the
State.   The United States Supreme Court in that case held
that these provisions of the Missouri election laws were not

in violation of the fourteenth amendment of the Federal constitution. While we consider this last case decisive on the question of the application of the fourteenth amendment to this City Election law on the points here involved, nevertheless, as the question has been so insistently urged upon us, we refer to a few other decisions of the United States Supreme Court which involve substantially the same principle as to territorial classification not being in contravention of that amendment.

In *Hayes* v. *Missouri,* 120 U. S. 68, the court held a statute of Missouri valid which provided that in capital cases in cities having over 100,000 inhabitants the State should have fifteen peremptory challenges, while elsewhere in the State only eight peremptory challenges were allowed. In *Chappel Co.* v. *Sulphur Mines Co.* 172 U. S. 474, the court held valid a provision of the Maryland constitution which abridged the right of trial by jury in the city of Baltimore but made no such provision for the other localities in the State. In *Mallett* v. *North Carolina,* 181 U. S. 589, the court held valid a statute of North Carolina which permitted the State, in criminal cases, an appeal to the Supreme Court in the eastern district of the State but not in the western district of the same State. See, also, as bearing strongly upon this point, *Gardner* v. *Michigan,* 199 U. S. 325, *Graham* v. *West Virginia,* 224 id. 616, and *Ocampo* v. *United States,* 234 id. 91. This court, in *Dawson Soap Co.* v. *City of Chicago,* 234 Ill. 314, approved the doctrine already quoted from *Missouri* v. *Lewis, supra.* In that same case this court quoted with approval from Judge Cooley's work on Constitutional Limitations, (2d ed. p. 390, note,) that "to make a statute a public law of general obligation it is not necessary that it should be equally applicable to all parts of the State. All that is required is that it shall apply equally to all persons within the territorial limits described in the act."

Numerous other decisions which discuss the principles here under consideration could be cited. We think, however, we have referred to those most nearly analogous, on facts and principles, to the present case. The City Election act has been in force in the city of Chicago for more than thirty years and in several other localities in the State for a less period. It has always been understood by those charged with its enforcement that the provisions of the various sections of the act which specify different penalties from those specified by the general Election law, or which lay down penalties for acts for which no penalties were provided by the general Election law, were constitutional. These provisions of this act have been held valid by the courts. It has always been considered in this and other jurisdictions that the provisions of the act now questioned were valid and enforcible. They have been held valid not only by this court, but, in principle, more than once, by the highest court in the United States. Even though the court as at present constituted, if the question were one of first impression, were to agree with the reasoning in the dissenting opinion of the late Justice Scholfield in *People* v. *Hoffman, supra,* nevertheless, to overthrow the opinion of the court in that case as to the constitutionality of this law after all these years would be contrary to every principle of good government and sound public policy. It would, in effect, practically nullify every effort that has been made in this State in the last quarter of a century to promote the purity of elections and to protect every voter in Chicago and the other cities in the State that have adopted this Election law, in his right to vote for any candidate he desires and have his vote counted as it is cast. To hold this provision of the law unconstitutional would overthrow a long line of decisions, and most certainly unsettle the confidence of the people in the stability and justice of our laws. If in any case that ever came before this court the doctrine of *stare decisis* or *res judicata* should be adhered to, this is that case. The

274 — 31

applications of these doctrines in cases where similar public questions were involved have been forcibly illustrated by the reasoning in the following authorities: Cooley's Const. Lim.—7th ed.—88; *Green Co.* v. *Lydy,* 172 S. W. Rep. 376; *Angus* v. *Plum,* 54 Pac. Rep. 97; *In re City of Seattle,* 113 id. 762; *Force Handle Co.* v. *Hisey,* 100 N. E. Rep. 450; *State* v. *Freear,* 125 N. W. Rep. 961; *Commonwealth* v. *National Oil Co.* 27 Atl. Rep. 374; *Gill* v. *Parker,* 31 Vt. 610; *Richter* v. *Burdock,* 257 Ill. 410; *Scown* v. *Czarnecki,* 264 id. 305.

In conformity with the above principles, and under the authority of the many decisions of this court heretofore cited bearing on this question, the provision of the City Election law here under consideration must be held constitutional.

The judgment of the criminal court of Cook county will therefore be affirmed.       *Judgment affirmed.*

DUNN, CARTWRIGHT and DUNCAN, JJ., dissenting:

The acts for which the plaintiff in error was convicted constituted a violation of section 82 of the general Election law. Those acts were fraudulent changes of a ballot cast at the general election so as to cause the ballot to appear and be counted as a vote for a person other than the candidate for whom it was intended. The penalty imposed by section 82 for this offense is a fine not exceeding $1000 or imprisonment in the county jail not exceeding one year, or both. The offense is therefore a misdemeanor. The penalty imposed by section 6 of the City Election law for this same offense, when committed in a city, village or incorporated town which has adopted that law, is imprisonment in the penitentiary for not less than one nor more than five years, and the crime is declared to be a felony. The election at which the crime was committed was held throughout the State, and at it were elected presidential electors, State officers, congressmen and county officers. The laws

of the State required the canvass of the votes cast to be conducted in the same manner throughout the State, and the crime in question might have been committed during the canvass at any one of the election precincts in the State. If it had been committed in any rural precinct or a precinct in any city, village or incorporated town which had not adopted the City Election law the offense would have been a misdemeanor. The plaintiff in error was convicted as for a felony because his crime was committed in a city which had adopted the City Election law. If he had done the same acts, making precisely the same changes in the same ballot in the same way, on the other side of the street but in a city which had not adopted the City Election law, he could have been convicted of a misdemeanor, only, and subjected to the lighter punishment. If this conviction can be sustained then the same grand jury may return two indictments at the same time for two crimes exactly alike, committed in the same county but on opposites of a street constituting the boundary between two cities, and the court, upon conviction, must sentence one defendant to at least one year's imprisonment in the penitentiary and cannot sentence the other to imprisonment exceeding one year in the county jail.

The fourteenth amendment to the constitution of the United States provides that no State shall deny to any person within its jurisdiction the equal protection of the laws, and the same guaranty is provided by section 2 of article 2 of the constitution of this State, which declares that no person shall be deprived of life, liberty or property without due process of law. These constitutional provisions guarantee to all citizens the right to be governed by general laws acting equally upon all persons under the same circumstances, and it has been held many times that equality of protection under the laws requires that no person shall be subjected to a greater or different punishment for a crime than that to which others are subjected for the same crime.

(*Pace* v. *Alabama,* 106 U. S. 583; *Barbier* v. *Connolly,* 113 id. 27; *Yick Wo* v. *Hopkins,* 118 id. 356; *Eden* v. *People,* 161 Ill. 296; *Bailey* v. *People,* 190 id. 28; *Horwich* v. *Walker-Gordon Laboratory Co.* 205 id. 497.) The rule which prohibits the imposition of different penalties applies only to cases where the circumstances are the same and the parties are in the same situation. It does not prevent the classification of crimes according to places, conditions or persons, provided the classification is based upon some difference in places or persons or conditions constituting a real, natural or intrinsic distinction in the acts. Statutes imposing a heavier penalty for a second offense are sustained because the prior conviction is a good reason for placing the offender in a different class from first offenders and imposing a severer punishment. Wherever a substantial reason exists for dividing persons into classes and imposing different punishments the legislature may pass valid laws imposing different penalties for the same offense, provided every such law fixes the same penalty for every one in the same class. What constitutes the distinction in the present case? The alteration of a ballot by changing the name of a candidate and the change in the result of an election are neither more nor less serious offenses whether committed in a city in which the City Election law is in force or a city in which the City Election law is not in force or a rural election precinct. The imaginary line which separates the city from the country or one city from another makes no difference in the guilt of the offender or the effect or heinousness of his crime, on whichever side of the line it may be committed. The wrong done to the State is the same in either case.

The basis of classification is not population or municipal incorporation, even if either or both of those circumstances would constitute a sufficient basis. The only basis is the election by the people of a certain territory to adopt a law providing for the higher penalty. The population of two

cities may be the same, they may be precisely similar municipal corporations lying side by side, and the same act which is a misdemeanor in one is a felony in the other,—not because of any difference in size, population, situation, condition or circumstances, but because the people of one city have voted to adopt a law providing the higher penalty while the people of the other city have not. If the law provided for no more than this one change in the penalty for fraudulently altering a ballot, we presume it would hardly be contended that the legislature had power to pass a law imposing a different penalty for this crime when committed in cities, villages or incorporated towns of a certain population from that imposed when committed elsewhere, whether such law should become effective directly or only upon its adoption by a popular vote. How can it be said that either population or municipal incorporation can affect the degree of criminality of the offense?

The legislature has the power to pass laws the operation of which may be made to depend upon a vote of the electors of the State or of the district to be affected by it. It may also delegate to municipalities the exercise of the police power, and declare to be criminal acts done in violation of the prohibitions which have been established in pursuance of authority conferred by law. The carrying on of certain businesses or the doing of certain acts falling within the police power, in localities where they have been prohibited in pursuance of statutory authority, may be declared by statute to be crimes though not criminal in other places. Such statutes will be upheld where they operate equally upon all persons within their terms and are of such a character as tend to promote the safety, health, morals or welfare of the people. They are not in violation of due process of law though the acts may be lawful in other parts of the State. Also, the guaranty of due process of law and the equal protection of the laws does not extend to mere methods of procedure. In *Missouri* v. *Lewis,* 101 U. S. 22, it

is said: "The fourteenth amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the fourteenth amendment, there is no solid reason why there may not be such diversities in different parts of the same State. A uniformity which is not essential as regards different States cannot be essential as regards different parts of a State, provided that in each and all there is no infraction of the constitutional provision. Diversities which are allowable in different States are allowable in different parts of the same State."

Subject to the two fundamental conditions that the court which assumes to determine the rights of the parties shall have jurisdiction and that there shall be notice and opportunity for hearing given the parties, the Supreme Court of the United States has sustained all State laws regulating procedure, evidence and methods of trial and held them to be consistent with due process of law. (*Twinning v. New Jersey,* 211 U. S. 78.) By its decision laws have been sustained involving the denial of a jury trial both in civil and criminal cases; the substitution of an information for the indictment of a grand jury; an enactment that the possession of policy-slips raises a presumption of illegality; the admission of the deposition of an absent witness in a criminal case; the allowance of an appeal to the Supreme Court from certain counties of a State which was denied in other counties; and the allowance of a greater number of challenges of jurors in a criminal case in cities having a certain population than elsewhere. In no case, however, has it been held that it was permissible to impose upon one

person a greater burden or liability or punishment than on another for the same act.

The case of *Mason* v. *Missouri*, 179 U. S. 328, is cited in the opinion of the majority to sustain the proposition that acts done in one .part of the State might be treated as crimes which were not crimes if committed in another part of the State. In that case the court had under consideration the validity of an act of the General Assembly of the State of Missouri known as the Nesbit law, providing for the registration of voters in cities having a population of over 100,000. The constitution of Missouri authorized the General Assembly to provide by law for the registration of voters in cities and counties having a population exceeding 100,000 and in cities having a population exceeding 25,000 and not exceeding 100,000, but not otherwise. In 1895 a law was passed applying to all cities exceeding 100,000 inhabitants, which included the city of St. Louis. The Nesbit law, enacted in 1899, applied to cities of more than 300,000 inhabitants, and therefore withdrew the city of St. Louis from the operation of the prior law. The auditor of the city of St. Louis having refused to audit the accounts of the board of election commissioners appointed under the Nesbit law upon the ground that the act was void because repugnant both to the constitution of the State of Missouri and to the constitution of the United States, the commissioners applied for a writ of *mandamus* to compel him to do so. It was insisted that under the constitution of Missouri only one registration law could be enacted for all cities having a population exceeding 100,000; that the city of St. Louis, therefore, could not be classed separately from other cities having a population exceeding 100,-000 but less than 300,000, and that as the earlier law threw about the right of suffrage greater safeguards than the later law, therefore the citizens of St. Louis were denied the equal protection of the laws. The Supreme Court of Missouri held that the provision of the State constitution re-

specting the enactment of registration laws did not limit the power of the General Assembly to create more than one class, composed of cities exceeding 100,000 in population, and that the Nesbit law was not therefore repugnant to the constitution, and the peremptory writ was awarded. The Supreme Court of the United States held itself bound to accept the conclusion of the State court that the act was valid under the constitution of the State, and held that the power to classify cities with reference to their population having been exercised in conformity with the constitution of the State, the circumstance that the registration law in force in the city of St. Louis was made to differ in essential particulars from that which regulated the conduct of elections in other cities in the State of Missouri did not in itself deny to the citizens of St. Louis the equal protection of the laws, nor did the exercise by the legislature of the discretion vested in it by law give rise to a violation of the fourteenth amendment to the constitution of the United States. Counsel in argument stated that certain acts are crimes if committed in one locality in the State but not so when committed in another, and that the same offense was punishable in different ways in different parts of the State. It cannot be told from the report of the case whether this statement was correct or not, but the argument is not given any attention in the opinion of the court and the criminal provisions of the statute are in no way referred to. The extent of the judgment is that the Supreme Court of Missouri having decided that the General Assembly had power, under the State constitution, to pass a registration law based upon the classification contained in the Nesbit law, the Supreme Court of the United States must accept that conclusion, and that, the election franchise being established by the laws and constitution of the State, the registration law enacted in conformity with that constitution did not deny the equal protection of the laws though its provisions differed for different classes of cities.

It is claimed on behalf of the People that the City Election law was held constitutional in the case of *People* v. *Hoffman,* 116 Ill. 587, and therefore the sections which imposed penalties for its violation are to be regarded as constitutional. In that case the City Election law, as a whole, was held constitutional, but no question arose in the case regarding the enforcement of the criminal provisions of the act. It was insisted that the law was local and special; that elections under it would not be free and equal; that the method of appointing commissioners was in violation of the article of the constitution which provides for the separation of the powers of government; that the law established a political test for office; that the regulations in regard to registration were so burdensome and unreasonable as to conflict with section 1 of article 7 of the constitution, which declares the qualification of voters. No mention of the criminal provisions of the act is made in the opinion of the court. The action was *quo warranto* against the election commissioners, and the question was the power of the legislature to enact the law, which provided a different system for the registration of voters and the conduct of elections in cities adopting it from that prevailing in other parts of the State. Though no question as to enforcement of the criminal provisions of the act arose, in the dissenting opinion, in which three of the justices concurred, the penalties imposed different from those of the general Election law were referred to, along with the other differences in the act, in arguing that the act was local and special and not a general law. The decision reached in that case was that the act was not local or special but was a general law and did not conflict with the constitution in the particulars which have been mentioned. But it does not follow from this conclusion that every provision in the act is constitutional. The general scheme of the statute was upheld as a legitimate exercise of legislative power, but it was not held that every part of the act and all its provi-

sions were constitutional. The question in controversy now was not passed upon and is not affected by the decision in *People* v. *Hoffman, supra.*

Much space in the opinion of the court has been devoted to sustaining the correctness of that decision and the constitutionality of the City Election law. We do not question the constitutionality of the act or the correctness of the decision. The act is a valid registration and election law and all its sanctions within the limitations of the constitution must be sustained. It is equally important that so far as it goes beyond the constitutional limitations imposed for the protection of the individual against the enactment of unequal legislation it should be overthrown. The criminal who stands upon his rights in this case may, as an individual, be worthy of little consideration, but the principle upon which his writ is founded is at the foundation of all free and equal government.

It may be desirable that the offenses in connection with elections which result in defrauding voters in the counting of ballots differently from the way in which they were cast and in fraudulently declaring the results of elections ought to be punished as felonies everywhere throughout the State. Action for that purpose can be taken only by the legislature. The facts, if such are the facts, that they are more likely to be committed in one part of the State than in another, or that they are less easily detected, or that opportunities for the commission of such crimes are more frequent or more favorable, or that convictions are more difficult to obtain, or that persons are more willing to run the risk of punishment, are not reasons which justify the imposition of a different penalty for the same crime upon different persons. In our judgment the classification of such crimes as misdemeanors when committed in one part of the State and felonies when committed in another is not founded upon any proper basis.