# UPTON SHAW *et al.*

## *v.*

# ALLEN J. HILL *et al.*

1. WRIT OF ERROR—*what a final disposition of suit.* Where the only relief sought by a bill in chancery is an injunction, the dissolution of the temporary injunction, upon motion, is equivalent to the sustaining of a demurrer to the bill, for want of equity, and is a complete denial of any equity in the bill, and must be regarded as such a final order as may be reviewed on error.

2. COUNTY SEAT—*removal of—what court to order election.* Prior to the election of the board of county commissioners, provided for in counties not under township organization, the county court, composed of the county judge and two associates, was the proper tribunal to order an election to determine the question of the removal of the county seat of their county.

3. SAME—*right to enjoin removal of offices until contest decided.* Where it appeared, by a bill to enjoin county officers from removing their offices and records from the old county seat to another, that a majority of the voters, at the election on the question, was in opposition to the removal, and that there was a proceeding to contest the election then pending, and that the county officers were about to transfer the records, etc., to the new county seat before such contest was determined: *Held*, on demurrer, that the bill showed good cause for interference by injunction, but that an injunction should have been prayed for in the bill contesting the election.

4. CONTEST OF ELECTION—*for removal of county seat.* Until the determination of a suit in equity, contesting an election for the removal of a county seat, there should be no removal of the records or change of the

offices if the suit is prosecuted with reasonable diligence; and to prevent such removal, an injunction is proper in the suit between the contesting towns.

5. COUNTY COURTS—*for county business—continued by the constitution of* 1870. The constitution of 1870 continued in existence the county courts, for the transaction of county business, in counties which had not adopted township organization, until the election of the "board of county commissioners," and authorized them to exercise their "present jurisdiction," which is held to mean such other powers as might be conferred, of a public concern, relating to county affairs, as well as the powers conferred by previous laws.

WRIT OF ERROR to the Circuit Court of Cass county; the Hon. CHARLES TURNER, Judge, presiding.

Mr. G. POLLARD, Mr. I. J. KETCHAM, and Mr. T. H. CARTER, for the plaintiffs in error.

Messrs. WHITNEY & FOSTER, and Messrs. ROBERTS & GREEN, for the defendants in error.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This bill was filed, charging that the officers of the county of Cass threatened to remove their offices and the records of the county from the present county seat to Virginia; that the act of the county court in ordering an election was unauthorized and void; that a majority of the voters, qualified to vote, did not vote in favor of removal, and prayed that the defendants be restrained from their intended action.

The motion to dissolve the injunction issued when the bill was filed, and which motion was sustained by the court, was such a substantial and final disposition of the bill as to entitle the complainants to a writ of error. The motion had the same effect as a demurrer to the bill, for want of equity, and constituted an admission of the material allegations. The decree, therefore, dissolving the injunction, was a complete denial of any equity in the bill, and must be regarded as final. *Titus* v. *Mabee,* 25 Ill. 257.

The effect of the decree, then, was to deny any relief upon either ground alleged in the bill—that the order of the county court, as to the election, was void, or that a majority of votes was against removal.

The first question presented is a question of law. The order for the election was made by the county court, composed of the county judge and two persons associated with him. They are, by the law of February 12, 1849, constituted a county court for the transaction of *"county business,"* and are endowed with all the power, jurisdiction and authority, before that time conferred by law on the county commissioners' court, under the constitution of 1818, and the laws enacted under it. Sess. Laws 1849, sec. 15, p. 65.

The act of 1872, "to provide for the removal of county seats," (Sess. Laws of 1871–72, p. 309), evidently refers to the above named court when it authorizes the "county court" to order an election in regard to the removal of a county seat. The "board of county commissioners," which, by section 6 of article 10 of the constitution of 1870, will succeed the present county court in the transaction of county business in counties not under township organization, has not yet been elected, and will not be until in November, 1873. The fourth section of the schedule of the constitution of 1870, continued in existence the county courts for the transaction of county business in counties which had not adopted township organization, until the election of the "board of county commissioners," and authorized such courts to "exercise their present jurisdiction." The words "present jurisdiction" can not be construed with reference to laws in existence at the time the constitution went into operation. They are not a prohibition upon the legislature in the enactment of any additional laws regulating such courts, but are to be regarded as a mere limitation upon the power to change the jurisdiction from "county business" to civil or criminal causes.

If the act of 1872, in directing the county court to order the election referred to in the bill, related to the "public

concerns of the county, collectively," and to the "county business," the inference is irresistible that the legislature had in view the court which made the order. It was the only court in the county which had jurisdiction of its "public concerns" and the "county business," in the sense in which these phrases have been used in the laws, from 1819 to 1849, inclusive. The removal of the county seat was a matter of interest to all the people of the county; was of public concern, and was strictly county business. We are, therefore, of opinion that the order for an election was made by the proper court.

The allegation that a majority of the votes was in opposition to removal, was admitted to be true by the motion to dissolve the injunction. This entitled the complainants to the benefit of the writ. It would be wrong and oppressive, and entail a useless expenditure of money, to permit a removal of the records under such circumstances.

It further appears, from the allegations of the bill in this case, that a proceeding in equity, according to section 12 of the act of 1872, has been instituted by the city of Beardstown against the city of Virginia for the purpose of contesting the legality of the election. By the latter clause of section 12, any of the legal voters and tax payers of the county may become parties to this suit, either as complainants or defendants.

Justice to all parties, and the clear intent of the law, demand that there should be no removal of the records or change of the offices until the determination of the suit contesting the election, if it is prosecuted with reasonable diligence. *The People ex rel.* v. *Warfield,* 20 Ill. 159.

Hence, to prevent such removal under the circumstances, an injunction should properly issue. It should, however, be asked in the suit pending between the two towns, and all matters in controversy settled in that suit.

The decree of the court is reversed and the cause remanded, and it is ordered that the injunction issued herein shall

continue in full force until the complainants shall have an opportunity at the next, or some subsequent term of the circuit court, to present their petition, with proper allegations, to be made parties to the pending suit, wherein the city of Beardstown is complainant, and the city of Virginia is defendant, and to make such parties defendants as they may desire ; and to ask for an injunction in that suit to restrain the officers of the county from any removal of their offices, or the records or papers thereof, from the present county seat, until the determination of the suit contesting the validity of the election ; and then the present bill should be dismissed.

*Decree reversed.*