## IN RE JOHN M. CLAYTON.

Hartford Dist., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The act of 1889 (Session Laws, ch. 167,) provides that "on the trial of any person prosecuted for intoxication, if he shall be found guilty, it shall be the duty of the prosecuting officer to request him to disclose under oath when, where and from whom he procured the liquor by which his intoxication was produced," and that "if he shall refuse to make such disclosure it shall be the duty of the magistrate before whom such trial is had to commit the accused for contempt of court to the common jail for not less than ten nor more than thirty days." On a writ of habeas corpus prayed out by a person committed under the statute it was held—

1. That the statute was not unconstitutional as depriving the prisoner of the right to a trial by jury, as secured by art. 1, sec. 21, of the state constitution.

2. Nor as depriving him of liberty without due process of law, as forbidden by art. 1, sec. 9, of the state constitution.

3. Nor as violating the fourteenth amendment of the constitution of the United States, by denying to the prisoner "the equal protection of the laws."

4. Nor invalid as making that a contempt of court which had no relation to the dignity or duty of the court nor to any proceeding pending before it, nor to the administration of justice in any particular case.

5. Nor as being contrary to public policy and natural justice.

[Argued October 10th—decided December 15th, 1890.]

APPLICATION to Hon. S. O. PRENTICE, a judge of the Superior Court, for a writ of *habeas corpus.* The return set forth the following mittimus, under which the complainant was held by the sheriff of Hartford County in the county jail:—

"To the sheriff of the county of Hartford, or his deputy; the marshal of the city of Hartford, or his deputy; or either policeman of said city; or any constable of the town of Hartford in said county, and to the keeper of the jail in Hartford in said county.—GREETING:

"Whereas John M. Clayton was this day, at a session of the City Police Court, holden within and for the said city

In re Clayton.

of Hartford, by said court found guilty of contempt of court, by refusing, upon request of Francis H. Parker, prosecuting attorney for the city of Hartford, on the trial of the said Clayton for the crime of drunkenness, after said Clayton had been found guilty of intoxication, to disclose under oath when, where, how and from whom he procured the liquor by which his intoxication was produced, against the peace and contrary to the form of the statute in such case made and provided;* whereupon it was considered and ordered by said City Police Court that the said Clayton be imprisoned in the jail in the town of Hartford, in the county of Hartford, for the period of ten days; said sentence to take effect from the expiration of the sentence passed this day for being found drunk, for his said contempt of court, whereof execution remains to be done.

"And whereas the said Clayton, now before said Police Court, neglects and refuses to comply with and perform said sentence—

"These are therefore, by authority of the state of Connecticut, to command you to take and convey the said Clayton to the jail in the town of Hartford in said county, and him deliver to the keeper thereof, and leave with him this warrant; and the said keeper is hereby commanded to receive said Clayton into his custody within said jail, and him confine and imprison within the same for the period of ten days

---

* The following is the statute under which the complainant was committed to prison, being chapter 167 of the acts of 1889:

SECTION 1. On the trial of any person prosecuted for intoxication, if he shall be found guilty, it shall be the duty of the prosecuting officer to request him to disclose, under oath, when, where, how, and from whom he procured the liquor by which his intoxication was produced; and if the accused shall make such disclosure, the same shall not be used against him on any prosecution; but if he refuse to make such disclosure, it shall be the duty of the magistrate before whom such trial is had, to commit the accused for contempt of court to the common jail for not less than ten nor more than thirty days. If the accused shall be guilty of false swearing in making such disclosure, it shall be perjury.

SEC. 2. The disclosure, so given as aforesaid, shall be taken down in writing by said magistrate or his clerk, and certified by said magistrate or clerk, and forwarded to the state's attorney for the county where such trial is had.

from the expiration of the sentence passed this day for being found drunk, for his said contempt, and him safely keep till he shall be otherwise discharged by order of the law. Dated at the city of Hartford, this 15th day of August, 1890.

ALBERT C. BILL,<br><i>Clerk of the City Police Court.</i>"

To this return the complainant filed the following demurrer:

"The complainant demurs to the return because he says it is insufficient in law, in that the statute on which the commitment is based is obnoxious to constitutional provisions in the following particulars:

"1. It is a deprivation of the right to trial by jury, as provided by section 21 of article first of the constitution of Connecticut.

"2. Such a commitment on said statute is a deprivation of liberty without due process of law, as forbidden by section 9 of article first of the constitution of Connecticut.

"3. The matter made a contempt of court by the statute is not a proper contempt, and it is incompetent for the legislature to suspend or abrogate the prisoner's constitutional prerogatives by making such refusal a contempt and providing a summary commitment therefor, since the refusal is entirely disconnected with any proceeding pending before the court, and has no relation whatever to the dignity or duty of the court, or to the administration of justice in any present or future case.

"4. The statute is in violation of the fourteenth amendment to the United States Constitution, in that it deprives the prisoner of the equal protection of the law in subjecting him to inquiries under summary proceedings and penalties, to which other citizens who procure liquor are not liable.

"Wherefore the complainant prays this honorable court that the return of the respondent officer may be adjudged insufficient in law, as being based on a statute obnoxious to constitutional rights as hereinbefore set forth, and that therefore judgment be rendered forthwith for the discharge and release of the petitioner from further confinement."

The judge held the return sufficient and remanded the complainant to the custody of the sheriff. The complainant appealed to this court.

*G. P. McLean* and *A. Brainard*, for the appellant.

1. The statute in question is void in that it deprives the person committed of the right to trial by jury, as guaranteed by section 21 of article first of the constitution of Connecticut; and deprives him of his liberty without due course of law. The statute has but one purpose, and that is to secure from persons convicted of the crime of drunkenness a truthful statement of the time, place and manner in which the liquor causing the intoxication was procured, together with the name of the person from whom it was procured. What is to be the subsequent use of this statement, except that it is to be sent to the state's attorney, the statute does not hint, but we may safely assume that it was the hope of the men who framed this act that it would in some way bring to light illegal sales of liquor. How, then, shall we deal with the language of the law so as to effect this purpose? The language is imperative. " Every person convicted of the crime of drunkenness shall, after said conviction, disclose, under oath, *when*, *where*, *how*, and *from whom* he procured the liquor. The magistrate shall write it down. If the person convicted shall refuse to make such disclosure, he shall be committed to the common jail for a term of not less than ten, nor more than thirty days." But we must remember that what we want is a *truthful* disclosure. Surely the legislature does not want to lay up *false testimony* for a purpose known or unknown. And we must also bear in mind that a law which commands a man to tell what he *does not know* or do what he cannot do, is *inoperative and void*. It may be that the convicted person is, at the time of his conviction, intoxicated to such a degree that he cannot give intelligent utterance to the disclosure required. Or that he is in a sober state, but cannot remember the events which occurred while he was intoxicated. Or that he never heard the name of the person from whom he procured the liquor.

Or that his condition is due to the use of morphine. Or that he is able to state some of the circumstances required by the statute and not others. And it may be that he will offer a statement manifestly improbable, such as that he procured the liquor of a person known to be dead, or at an impossible hour, or in an impossible place or manner. These contingencies and many others are bound to arise daily in the administration of this law. What must be the jurisdiction of the justice in such cases to secure the intended operation of the law and carry out the intent of the legislature? Must he record a statement known at the time to be false, or improbable, and send it to the attorney for the state to be innocently used by him in subsequent investigations? To so hold forbids the carrying out of the intent of the legislature and stamps the law as a producer of false testimony, perpetuated for the arrest and conviction of innocent men. If the person convicted is unable, for any of the reasons stated, or for any good cause, to give the whole or a part of the information required, does the law intend that it will in such cases be the duty of the court to consider such failure or inability as a constructive refusal and commit accordingly? Thus we have a statute inoperative in all cases, and it will not be necessary to quote decisions to the effect that such laws are void, and the sooner they are so declared the better for the public good and the credit of the General Assembly. The liberty of the person in custody is at once placed at the discretion or caprice of the presiding judge. The judge determines the truth or falsity of the disclosure offered, the validity and good faith of the reasons assigned for making no disclosure—pure questions of fact, involving in their determination the liberty of the citizen, and he can have neither formulated charge, nor counsel, nor witnesses, nor appeal, nor adjournment, that he may establish his right to credence and liberty. If this law is left to operate in a single case, or in any view of its application, no relief can be possible in any case. How can a person secure release on habeas corpus where the record discloses no error and his only hope is to reverse a finding

of fact clearly within the discretion of the court below? *Fox* v. *Hoyt*, 12 Conn., 491; *Douglass* v. *Wickwire*, 19 id., 489; *State* v. *Bloom*, 17 Wis., 538; *Stewart's Case*, 1 Abbott Pr., 210; Church on Habeas Corpus, 373, 481. It is not necessary to go into nice distinctions to ascertain the meaning of the expression " due process of law " as applicable to the cases which must arise under this statute. We ask the gentlemen interested in the salvation of this law to find a definition of the expression " due process of law " which does not insist that in any proceeding involving an undetermined question imperiling liberty or property, that the person whose property or liberty is imperiled shall be entitled to counsel and witnesses in his behalf. A legislative enactment is not necessarily " the law of the land," nor is a court in proceeding under such enactment necessarily proceeding according to " due course of law " as those words are used in our constitution. *Camp* v. *Rogers*, 44 Conn., 291; Cooley on Const. Lim., 433–435, and notes. Acts interfering with constitutional rights in a way similar to the law in question have been adopted in only one state in the Union, and that act has been already declared unconstitutional by the Supreme Court of the state. *Ex parte Grace*, 12 Iowa, 208.

2. The statute is in violation of the fourteenth amendment of the United States constitution in that it deprives the prisoner of the equal protection of the law in subjecting him to inquiries under summary proceedings and penalties to which other citizens who procure liquor are not liable. In this case Clayton was found guilty of the crime of drunkenness, and sentenced by the court to pay a fine of $5 and the cost of prosecution. This sentence being satisfied, the jurisdiction of the court over the person of Clayton is at an end so far as it has a right to detain him for any criminal offense. He had as good a right to refuse to answer the interrogatories of its attorney as had any of the score of bystanders about him. The law then takes one person, and because he has procured liquor compels him to talk or go to jail, when there may be a hundred persons as near the court

who have procured liquor in greater quantities and whom
the law does not and cannot reach.  In *San Mateo County*
v. *South Pacific R. R. Co.*, (U. States Court, Cal., July,
1882, as reported in Cooley on Constitutional Limitations,
p. 13,) FIELD, J., holds that the fourteenth amendment was
adopted to reinforce and make universal the Civil Rights
Act, which provides that all classes shall be entitled " to
full and equal benefit of all laws and proceedings for the
security of person and property."  The act in question re-
moves a certain class from this protection.  Shall the citi-
zens of Connecticut who procure liquor be divided into two
classes, the one to be summarily imprisoned and the other
to be left secure in their liberty?  It discriminates not only
between those who procure liquor, dividing them into two
classes, but it discriminates between those who procure
liquor and those who do not.  We must bear in mind that
the procurement of liquor is not yet a crime in the state of
Connecticut.  We must bear in mind that it is not a crime
to sell liquor.  In no case arising under this statute is it to
be claimed, that, as a fact or a presumption, the provisions
of the license law have been violated.  Shall the fact that
a man happens to be in a court room subject him to the loss
of constitutional rights guaranteed to all persons?  A court
room is supposed to be the place, of all places, where a man
is to be secure in these rights.

3. The statute makes that a contempt which is not a
proper subject of contempt.  The disclosure required is
entirely disconnected with any proceeding pending before
the court.  It has no relation whatever to the dignity or
duty of the court.  It has no relation to the administration
of justice in any existing case or matter, present or future,
before any court.  The statute itself does not hint that the
disclosure can ever be put to a legitimate use.  It does not
hint that it can subserve the ends of public morality or
public safety in any legitimate way.  The courts say with
one voice that the questions asked must be pertinent to
some issue, must relate to the investigation of some exist-
ing cause.  Rapelye on Contempts, 82 and cases there

cited.   If this law had attempted to provide for the use of
the disclosure secured, in any issue present or future, it
would have at once spoken in direct violation of the constitu-
tional right of all persons accused of crime to be confronted
by the witnesses against them.   It merely provides that the
disclosure shall be sent to the attorney for the state, where
it must stay, confessedly useless for any legitimate purpose.

4. If the law in question is in fact against the letter of
the constitution, or inoperative and void, shall it escape the
condemnation of this court under a claim that it is a police
regulation in the interests of public safety generally?   Po-
lice regulations have their legitimate field, but this field has
a boundary; it may be a large field, but the limit is none
the less definite when it is reached.   A police regulation,
summary in its nature and directly interfering with the
right of personal liberty, must have a definite object clearly
attainable, and that object must be undeniably in the inter-
est of public order and safety.   The means adopted must
be clearly adapted to secure the end desired.   It must be
founded upon a necessity actually existing.   If its purpose
is in the line of investigation, it must obviously be confined
to crimes actually committed, and dangers imminent and
well defined.   Tiedman's Limitation of Police Power, 1–16;
*Lakeview* v. *Rose Hill Cemetery*, 70 Ill., 192; *State* v. *Noyes*,
47 Maine, 189.   The law in question clearly *anticipates* the
necessity, which can be its only excuse.   It can hardly be
assumed that liquor has been sold illegally because sundry
citizens are found intoxicated in a city and state where the
sale of liquor is as legal as the sale of shoes.   If the statute
in question. has a purpose in that it strives to discover whe-
ther or not illegal sales have been made, can the means
adapted be said to be adequate and just?   The disclosure
secured cannot be used constitutionally in any subsequent
proceeding.   It is at the best the statement of a man recov-
ering from a debauch or still in an intoxicated state—testi-
mony of a nature wholly unworthy in the trial of a question
of any importance—the testimony of a man who is more
liable, for obvious reasons, to state that he procured the

liquor of some law abiding licensee, who refused to gratify his appetite, than to give away the name of the person who granted his request. In fact, it is evident from any point of view that the law will be used to more effect in securing the conviction of the innocent than the guilty. Whether or not the law may sometimes lead to a just conviction and its purpose brought within the limits of the police power of the state, we do not consider important. Even if the purpose were definite and the necessity great, the *methods* of proceeding must bear the test of constitutional requirements. Even where crimes have been committed and the *corpus delicti* established, the investigation authorized to secure the apprehension of the guilty must be conducted in a proper and legal manner, and no person used as a witness in the preliminary hearing can be committed for contempt of court for refusal or failure to testify without opportunity to establish the good faith and adequacy of his reasons for such refusal or failure. The legislature of Connecticut, in a law now in force relating to investigation concerning offenses *known to be committed*, clearly recognizes the force of constitutional protection and sanctions the views here expressed. Gen. Statutes, § 91. The statute is, in its nature, inquisitorial and against the course of modern legislation. It bears a strong analogy to those statutes authorizing "searches and seizures" for the procurement of evidence of intended crimes, which the courts have so often denounced and which the constitution guards against. Cooley's Cons. Limitations, 331, 365. This law cannot assume for its support that a crime is even intended.

*W. Hamersley* and *F. H. Parker*, for the appellee.

CARPENTER, J. The complainant was convicted of intoxication, and was required to disclose under the act of 1889, chap. 167, "under oath, when, where, how, and from whom, he procured the liquor by which his intoxication was produced." He refused "to make such disclosure." Thereupon the magistrate (the judge of the police court of Hart-

In re Clayton.

ford), before whom the trial was had, proceeded " to commit the accused for contempt of court to the common jail" for ten days.

On a writ of habeas corpus he was brought before a judge of the Superior Court. The sheriff's return set out the proceedings in the police court, and the mittimus issued thereon. The complainant demurred to the return, because, he says, the statute, under which the proceedings were had, is obnoxious to constitutional provisions. The judge overruled the demurrer, and the complainant appealed.

Provisions for disclosures by persons found intoxicated, or arrested for intoxication, first appeared in the statute of 1854, and have since remained there with some changes from time to time. Until 1889 disclosures were at the option of the prisoner, and could only be made before conviction; and, upon being fairly made, they contemplated the discharge of the intoxicated person. The statute of 1889 made a radical change. It provides for disclosures only after conviction, does not discharge the prisoner, and the disclosure is made compulsory. Whether this act is a substitute for the statute previously existing, or is in addition thereto, is not now a material question.

The first ground of demurrer is that the statute " is a deprivation of the right to a trial by jury, as provided by section 21 of article first of the constitution of Connecticut."

This objection misconceives the nature and character of the proceeding before the police court. The appellant was not then before the court as a defendant in a criminal prosecution. That had been his position; but upon his conviction that was changed, and he became, so far as this case is concerned, merely a witness. He was in no sense on trial— no one was—and therefore was not in jeopardy. The proceeding was not judicial, but ministerial.

For more than a century and a half we have had upon the statute book a law authorizing the grandjurors in the several towns to meet and advise, and inquire into the offenses that had been committed, with power to summon and examine witnesses, and, if need be, to punish for contempt. Gen. Stat-

utes, § 91. This proceeding is but an extension of the same power to other officers, for the same general purpose, namely, the protection of society, by preventing crime through the detection and punishment of offenders.

The magistrate acting in an administrative, and not in a judicial capacity, the witness being in no jeopardy and exposed to no detriment provided he testifies fairly, this section of the constitution is not applicable.

The second ground of demurrer is that " such a commitment on said statute is a deprivation of liberty without due process of law, as forbidden by section 9 of article first of the constitution of Connecticut."

Punishment for contempt by a court, or other tribunal duly authorized, is " due process of law " within the meaning of the constitution. The right and duty of the state to protect its jurisdiction and dignity by punishing for contempt, in proper cases, through its officers, is the sacred right of self-defense.

The third ground of demurrer is that " the matter made a contempt of court by the statute is not a proper contempt, and it is incompetent for the legislature to suspend or abrogate the prisoner's constitutional prerogatives by making such refusal a contempt and providing a summary commitment therefor, since the refusal is entirely disconnected with any proceeding pending before the court, and has no relation whatever to the dignity or duty of the court, or to the administration of justice in any present or future case."

This objection rests entirely on the assumption that the testimony of the prisoner, when obtained, will be of no use ; in effect, that the statute is a mere wanton exercise of power. But this assumption is not well founded. The statute provides that the testimony shall be certified and forwarded to the state's attorney. Its utility is a matter for the legislature to determine, and it has done so. It is not for the appellant or the court to say that the information is of no value, and has no relation " to the administration of justice in any present or future case."

The fourth ground of demurrer is that " the statute is in

violation of the fourteenth amendment to the United States constitution, in that it deprives the prisoner of the equal protection of the law in subjecting him to inquiries under summary proceedings and penalties to which other citizens who procure liquor are not liable."

All offenders against law or good morals are liable to be subjected to some inconveniences from which others are exempt. Of those so offending some will be detected and made to suffer such inconveniences, while others may escape. It was not the purpose of this amendment to place all such offenders upon an equal footing.

There is one error assigned that does not seem to be raised by the demurrer, namely, that "the court erred in ruling and holding that the statute is a valid statute, not contrary to public policy and natural justice."

Perhaps we have sufficiently answered this; but we will add that it is the duty of all good citizens, when legally required so to do, to testify to any facts within their knowledge affecting public interests; and no one has a natural right to be protected in his refusal to discharge this duty. Public policy does not forbid, but on the contrary often requires, legislation to facilitate the administration of justice.

We find no error in the judgment appealed from.

In this opinion the other judges concurred.