(Nos. 18430-18431, 18568, 18590-18592.—

THE PEOPLE *ex rel.* John Rusch, Defendant in Error, *vs.* ROBERT WHITE *et al.* Plaintiffs in Error.—Same Defendant in Error *vs.* HARRY J. SMITH *et al.* Plaintiffs in Error.—Same Defendant in Error *vs.* TONY CIRONE *et al.* Plaintiffs in Error.—Same Defendant in Error *vs.* CHARLES B. THOMPSON *et al.* Plaintiffs in Error.—Same Defendant in Error *vs.* ERNEST MOELLER *et al.* Plaintiffs in Error.—Same Defendant in Error *vs.* ROBERT WHITE *et al.* Plaintiffs in Error.

*Opinion filed April 20, 1929.*

466

Farmer and Dunn, JJ., dissenting.

Louis Greenberg, John F. Tyrrell, and John F. Higgins, for plaintiffs in error.

Oscar E. Carlstrom, Attorney General, Charles Center Case, Special State's Attorney, and Roy D. Johnson, (Grover C. Niemeyer, of counsel,) for the People.

Mr. Justice Stone delivered the opinion of the court:

A petition was filed in the county court of Cook county on July 11, 1927, by John S. Rusch, chief clerk of the board of election commissioners of the city of Chicago, against plaintiff in error John Sherry, who acted as judge of election, and plaintiff in error Robert White, who acted as clerk of the election at the polling place in the sixteenth precinct of the Forty-second ward of the city of Chicago at the election held on June 6, 1927. The petition alleges misbehavior on the part of said judge and clerk of election in their offices as such judge and clerk at the polling place and avers that such constituted contempt of court, and prays a rule on Sherry and White to show cause why they should not be held in contempt of court. A rule to show cause was entered. Sherry and White each filed a sworn answer, admitting they were judge and clerk, respectively, of the election at the time and place named in the petition and denying all of the charges contained in the petition for rule to show cause. They filed a motion to be discharged be-

cause they had by their answer purged themselves of such contempt. The court overruled that motion. A motion was also filed to discharge them on the ground that the statute conferring jurisdiction on the county court to supervise elections and making the judges and clerks thereof officers of the county court is unconstitutional. This motion was likewise overruled. On hearing of evidence in open court plaintiffs in error were found guilty of contempt of court and each sentenced to the county jail for the term of two years.

A like petition was also filed by the same petitioner in the county court on July 11, 1927, against plaintiffs in error Harry J. Smith, Sam Cantazore and Robert White, and against Edward P. O'Malley, charging misbehavior as judges and clerks of election at the election held on the second day of November, 1926, and a rule was entered against them to show cause. O'Malley appears not to have been served with the rule and the cause proceeded against Smith, Cantazore and White. Like motions and sworn answers were filed by the three respondents and like proceedings were had. Respondents were found guilty of contempt of court and sentenced to the county jail for a period of one year.

A like petition was on March 14, 1927, filed by the same petitioner against plaintiffs in error Tony Cirone, Tony Viso, Tony Lombardo and Mike Imburgia, and against Ed Flanagan, all of whom, except Flanagan, appear as plaintiffs in error. No abstract has been filed in this case. It appears from the record that like proceedings were had, and plaintiffs in error, aside from Flanagan, were found guilty of contempt of court and were sentenced to the county jail for a period of one year. The misbehavior charged against plaintiffs in error is alleged to have occurred at the regular election held on November 2, 1926.

A like petition was filed by the same petitioner on July 11, 1927, against plaintiffs in error Charles B. Thomp-

son, Gus. Witt, Ray Shaw, Edward Heller and Harry Taylor Hughes, charging misbehavior as judges and clerks of the election held on the second day of November, 1926. No abstract has been filed in this case. It appears from the record, however, that like proceedings were had and that Thompson and Hughes were found guilty of contempt and each sentenced to the county jail for the period of one year.

On the 11th of July, 1927, the same petitioner filed a like petition against plaintiffs in error Ernest Moeller, Frank Schadeck, Edward Heller, Martin Nelson and Joseph G. Keil, alleging misbehavior as judges and clerks of the election held on the fifth day of April, 1927. No abstract appears to have been filed in this case, but it appears from the record that like proceedings were had and plaintiffs in error were found guilty and sentenced to the county jail for a period of one year.

There was also on August 8, 1927, filed by the same petitioner a like petition against plaintiffs in error Robert White, John Sherry, (alias Harry Joanes,) John Doe, (alias Harry J. Smith,) and Richard Roe, (alias Claude Williams,) alleging misbehavior as judges and clerks of the election held in the city of Chicago on the fifth day of April, 1927. On a like proceeding Sherry was found guilty of contempt and sentenced to the county jail of Cook county for a period of one year.

The petition for rule to show cause in each of these cases charges various acts of misbehavior on the part of the respondents, including keeping false poll-lists, making and delivering false returns, putting illegal ballots into the ballot-box, permitting electors to vote more than once, making false tallies, and charges of like character. The respondents found guilty have sued out a writ of error in each case. The six cases have been consolidated for hearing in this court.

The sufficiency of the evidence to support the finding of guilty and the reasonableness of the punishment imposed

are not questioned. The sole question involved on this review concerns the validity of section 13 of article 2 of the City Election act. (Cahill's Stat. 1927, p. 1143.) This section, in part, provides for the manner of appointment of judges and clerks of election. By its terms they are to be nominated by the board of election commissioners and their appointment confirmed by an order of court. The section also provides: "Upon the confirmation of such judges and clerks, at any time, a commission shall issue to each of such judges and clerks, under the seal of such court, and appropriate forms shall be prepared by said board of commissioners for such purpose. After such confirmation and acceptance of such commission, such judges and clerks shall thereupon become officers of such court, and shall be liable in a proceeding for contempt for any misbehavior in their office, to be tried in open court on oral testimony in a summary way, without formal pleadings, but such trial or punishment for contempt of court shall not be any bar to any proceedings against such officers, criminally, for any violation of this act."

Plaintiffs in error attack the validity of section 13 of the above statute on the ground (1) that the legislature may not confer on the county court power to supervise elections or appoint judges and clerks of election as officers of that court; (2) that section 13 of article 2 of the City Election law, in so far as it provides special practice for contempt of court proceedings, is not a general but a local or special law relating to practice of courts of justice, and is for that reason invalid; (3) that contempt of court is a judicial question and is not subject to legislative control; and (4) that the answers of the plaintiffs in error, as respondents, purge them of contempt.

Section 18 of article 6 of the constitution is as follows: "There shall be elected in and for each county one county judge and one clerk of the county court, whose terms of office shall be four years. But the General Assembly may

create districts of two or more contiguous counties, in each of which shall be elected one judge, who shall take the place of, and exercise the powers and jurisdiction of county judges in such districts. County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators, and settlements of their accounts, in all matters relating to apprentices, and in proceedings for the collection of taxes and assessments, and such other jurisdiction as may be provided for by general law."

The first two grounds of attack here urged were before this court in the case of *People* v. *Hoffman*, 116 Ill. 587. It was there held that inasmuch as the act operates upon any city, village or town which adopts it, it is a general law. Nor is this act rendered any more a special or local act relating to practice in courts of justice by the fact that the procedure in the county court is applicable only in cases arising in cities adopting the act. The practice is made to apply to all cases of contempt under this law. The fact that a certain proceeding is authorized under a law in itself general but which is applicable only in the cities adopting it does not tend to open such proceeding to the objection that it is a local or special law affecting courts of justice. The act is not open to this objection.

The power of the legislature to provide, as in this Election law, for the appointment of election commissioners, judges and clerks of election was also attacked in the *Hoffman case* on the ground that such appointment involved the exercise of a political power beyond the functions of the county court, which, it was said, are exclusively judicial. It was in that case pointed out that under section 18 of article 6 of the constitution county courts are given certain specified jurisdiction and such other jurisdiction as may be provided for by general law. It was there said: "This grant is liberal enough, on the face of it, to authorize the

legislature to extend the jurisdiction of the county courts to almost any subject." It was also there held, citing *People* v. *Williams,* 51 Ill. 63, and *People* v. *Morgan,* 90 id. 558, that the judicial department of government may be given power to appoint officials whose duties are not strictly judicial or necessarily connected with the business of the courts, calling attention also to various other powers given to the county court by the legislature and sustained by this court.

In *Sherman* v. *People,* 210 Ill. 552, a proceeding for contempt of court against certain respondents for misbehavior as judges of election was brought, and in that particular the case is identical with the one at bar. The principal question raised concerned the validity of sections 9, 11 and 13 of article 2 of the City Election law. Section 9 provides for the selection of judges and clerks, and it was as to that section contended that it was enacted on the false assumption that judges and clerks of election are concerned in the administration of justice, and the argument was that the General Assembly had no power to make judges and clerks officers of the county court and liable for contempt. It was held, however, that under section 18 of article 6 of the constitution the legislature properly conferred jurisdiction of this matter on the county court. The specific contention that the provisions of the act holding judges and clerks liable for contempt was invalid as beyond the power of the legislature to enact was denied and the act upheld in that particular. The procedure under section 13 of article 2 of the act was also attacked on the ground that it deprived the respondents of their liberty without due process of law. This contention was not sustained.

In *People* v. *Gordon,* 274 Ill. 462, Gordon was convicted in the criminal court of Cook county of fraudulently altering and changing an official ballot during the canvass of ballots following a certain election there referred to. It was there argued that the City Election law is special legis-

lation in that it provides a different punishment for altering the ballots than that provided by the general act, but it was held otherwise. The opinion in that case re-affirmed *People* v. *Hoffman, supra,* and cited a number of decisions of this court likewise supporting it.

While it is true the contempt features of section 13 of article 2 of the act were not directly before the court in the *Hoffman case, supra,* they were directly decided in the case of *Sherman* v. *People, supra,* and likewise in the case of *People* v. *Hoffman,* 322 Ill. 174. The latter cause arose on an original petition in this court praying that the respondent, sheriff of Cook county, be required to execute a writ of the county court of Cook county requiring him to take and hold the bodies of the respondents under commitment for six months as punishment for contempt because of fraud, as judges and clerks of election, occurring in an election held in the city of Chicago. It was there urged that the respondents in the contempt proceedings, while judges and clerks of election, were not officers of the county court within the meaning of section 13 of article 2 of the City Election law, and that that section, creating contempt for the misconduct on the part of the election officers, is unconstitutional on the ground, among others, that the legislature does not have power to declare an act to be contempt which has no relation to administration of courts of justice or which is not a contempt of court in fact. These contentions were not upheld and it was not doubted that the act is valid.

The above cases comprise those in which the City Election law was attacked on grounds the same as or similar to those urged here. This court has consistently upheld the validity of that act. Aside from the history of the litigation concerning it, however, we will consider as an original proposition the question whether under the constitution the legislature has power to confer jurisdiction on the county court to supervise elections, appoint judges and clerks as

officers of the court and punish them by contempt proceedings for misbehavior in office.

It will be noted that section 18 of article 6 of the constitution, after specifying certain jurisdiction of the county court, adds, "and such other jurisdiction as may be provided for by general law." To know just what the framers of the constitution intended by this provision it is necessary to examine the records and debates of the Constitutional Convention of 1870. The judiciary committee submitted to the committee of the whole in that convention a draft of the proposed judiciary article. Section 18, relating to county courts, provided that there shall be elected in each county one judge and one clerk of the county court, whose terms of office shall be four years. It also provided that such courts shall be courts of record and have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointments of guardians and conservators and settlements of their accounts, jurisdiction in all matters relating to apprentices, and in actions of debt, assumpsit, trover and trespass, either to person or personal property, where the amount claimed or the value of the property in controversy does not exceed $500; and jurisdiction of crimes and misdemeanors where punishment is not capital or confinement in the penitentiary was also given. The section concluded: "Said court shall also have jurisdiction in proceedings for the collection of taxes and assessments but no other jurisdiction relating to real estate."

An examination of the debates of that convention clearly discloses that the framers of the constitution had in mind, as to county courts, three principal purposes: (1) To increase the jurisdiction of the county court and render it more worthy of the confidence of the people; (2) to relieve the work of the circuit courts by conferring on the county courts jurisdiction of a variety of matters which might be disposed of between the terms of the circuit courts, which in some counties convened but twice each

year; and (3) to provide for jurisdiction of other matters not falling strictly within the general jurisdiction of circuit courts. (1 Const. Debates, pp. 1062, 1066, 1067, 1068, 1070, 1071, 1074; 2 id. pp. 1081, 1082.) It is also apparent that the convention could not agree upon a limitation of the jurisdiction of the county court. Various amendments and substitutes were offered attempting to particularly define such jurisdiction. (1 Const. Debates, p. 1062; 2 id. pp. 1465, 1466.) As shown by the arguments of Hon. Westel W. Sedgwick, of DeKalb county, in volume 1 at pages 1066, 1067 and 1074, of Hon. Elijah M. Haines, of Lake county, in volume 2 at page 1082, of Hon. Milton Hay, of Sangamon county, in volume 2 at page 1085, it was the purpose of the majority of the convention, as stated by Hay: "To secure some desirable ends in the way of limitation upon the legislature in respect to the future constitution of the court, [county court,] leaving as much as we reasonably can to the legislature. * * * Upon examination of almost every constitution of the United States I have found that nowhere in any of them have they undertaken to go into the details of the jurisdiction of these inferior courts. It seems to me we should provide that whatever jurisdiction is conferred by the legislature should be of a uniform character." Again, in volume 2, page 1086: "I see no other way * * * than by securing what we can by providing for uniformity, and leaving to the legislature the question of increasing or diminishing this jurisdiction as it may suit the different localities in the State."

Section 18 of article 6 of the constitution of 1870 occupied more attention and was more widely discussed by the Constitutional Convention than all the balance of the judiciary article combined, and the question was as to how the jurisdiction of the county court should be determined and whether it should be limited by the constitution. Sedgwick, on consideration of this section by the convention, offered a resolution striking much of section 18 as reported

by the committee of the whole, specifying the jurisdiction of the county court, and inserting in lieu thereof, "and such other jurisdiction as may be provided for by general law." This amendment was adopted. (2 Const. Debates, p. 1408.) On motion of Hon. Joseph Medill, of Cook county, an amendment was also made permitting the General Assembly to create districts of two or more counties, in each of which shall be elected one judge. (2 Const. Debates, p. 1408.) Thus section 18, in the form finally submitted to the people, was adopted by the convention. Later, when the judiciary article was finally before the convention, another attempt was made to substitute for section 18 a section fixing and defining the jurisdiction of the county court by enumerating the subject matters of such jurisdiction instead of leaving to the legislature the determination of the jurisdiction of that court. The attempt at such substitution failed. (2 Const. Debates, p. 1465.)

It is evident to anyone reading the interesting debates of that convention concerning section 18 of article 6 that it was the definite understanding of the convention that the amendment offered by Sedgwick and made a part of section 18, conferring on the legislature the power to prescribe by general law "such other jurisdiction" as it shall deem advisable, had the specific purpose to do just what its language indicates,—i. e., give to the legislature the power to confer on the county court, by general law, any jurisdiction which that body deemed it advisable to bestow. The construction of this language was before this court in *State of Illinois* v. *Aiello,* 317 Ill. 159, where it was objected that the legislature was unauthorized to give to the county court equity jurisdiction in the enforcement of the Prohibition act, with power to punish for contempt. It was there pointed out that under section 18 of article 6 the legislature is authorized to give to the county court jurisdiction over any matter, either in law or in equity, which it sees fit to confer. Nor is that the only occasion on which this ques-

tion has arisen. In *In re Estate of Mortenson,* 248 Ill. 520, the act of 1909, seeking to extend the jurisdiction of probate and county courts having probate jurisdiction, (Laws of 1909, p. 175,) was attacked, and it was there held that under the provisions of section 18 of article 6, granting to the legislature power to confer on the county court "such other jurisdiction as may be provided for by general law," the legislature may confer upon that court any jurisdiction which may be deemed advisable, but that the power to confer administration of trust estates on probate courts was not given to the legislature by the sections of the constitution creating probate courts. In *Frackelton* v. *Masters,* 249 Ill. 30, the act of 1909 was again considered, and it was there said: "Had the act in question been limited to county courts the constitutional objection already pointed out would not exist." The act was held valid in so far as it related to county courts though not as to probate courts. In *Myers* v. *People,* 67 Ill. 503, this court considered the act of 1872 increasing the jurisdiction of county courts, and it was held that the last clause of section 18 of article 6 is broad enough to warrant the legislature in conferring upon the county courts of the State concurrent jurisdiction with the circuit courts. In *People* v. *Loomis,* 96 Ill. 377, the power of the county court to foreclose mortgages when such power is granted by the legislature was upheld.

It seems, therefore, beyond the boundaries of legitimate debate that the legislature may confer on the county courts any jurisdiction deemed by it advisable. The constitution is a limitation on the power of the legislature. In the absence of constitutional restrictions the power of the legislature is unlimited. Here there is not only no limitation on the power of the legislature to confer new jurisdiction on the county courts but there is an express authorization so to do, subject only to the requirement that it be given by general law.

It is contended that this authorization is applicable only to matters judicial in character; that the supervision of elections is a ministerial or executive matter and not judicial, and that under article 3 of the constitution, dividing the powers of the government into three distinct departments, legislative, executive and judicial, the legislaure may not confer on the county court, as a judicial proceeding, that which in its nature is not judicial. The line of demarcation between the various departments of government is not distinct and cannot be clearly and distinctly drawn. Nor can the various departments of government operate entirely distinct from and without connection or dependence upon each other. There are certain powers of government which indubitably belong to certain of the departments provided by the constitution, such as the right to grant pardons or veto an act of the legislature, which belongs to the executive department; the right to make laws, which belongs to the legislative; and the right to construe laws and adjust controversies between citizens, which belongs to the judicial department. There are many other powers which may properly be assigned to one or the other of two departments. This is recognized in article 3 of the constitution, which provides: "The powers of the government of this State are divided into three distinct departments, the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." This is the declaration of a fundamental principle, and, though of vital importance, is to be understood as the broad theoretical line of demarcation between the great departments of government. This court, however, is not, when considering a question as to the extent of the powers of either of these departments, to confine its views to this general article, which confers no specific powers.

In *Field* v. *People,* 2 Scam. 79, this court considered article 1 of the constitution of 1818, which is in substance the same as article 2 of the constitution of 1848 and article 3 of the present constitution. It was there said of that article: "Its true meaning, both in theory and practice, is, that the whole power of two or more of these departments shall not be lodged in the same hands, whether of one or many. That this is the sense in which this maxim was understood by the authors of our government and those of the general and State governments is evidenced by the constitutions of all." This principle is also recognized in *Witter* v. *Cook County Comrs.* 256 Ill. 616.

The supervision of elections involves not only the exercise of ministerial powers but judicial powers as well. By the City Election law the county court is called upon to exercise judicial power. The petition for the adoption of the act is to be filed in the county court. That court is to judge of the sufficiency of such petition and submit the proposition to a vote of the people; (1 Cahill's Stat. 1927, sec. 1, p. 1138;) to give the legal notices of such election and instruct the judges and clerks of election as to the canvass of the ballots; (ibid. sec. 2;) likewise it is the duty of the county court to pass upon the sufficiency of a petition to reject the act when once adopted; (ibid. sec. 16;) to appoint election commissioners; (ibid. art. 2, sec. 1;) appoint and control, under the act, judges and clerks of election, and to hear objections to the appointment thereof and evidence on such objections, and review the discharge of judges and clerks; (ibid. sec. 13;) to review the work of registration canvassers when complaint is made of misbehavior in the discharge of their duties; (ibid. art. 3, secs. 8, 9;) to hear evidence on review of the action of the board of election commissioners denying to any applicant the right to register and to determine such right; (ibid. sec. 13;) and shall preside over and supervise the canvass of votes at an election and cause to be

entered of record in that court the result of such election. (Ibid. art. 5, sec. 7.) These and other provisions of the act call for the exercise of judicial power. No reason is seen why the legislature may not confer upon the county court the power to supervise elections as well as the administration of estates or of receiverships, and may likewise constitute the election commissioners and judges and clerks of election officers of that court, as administrators and receivers are such officers.

It has long been recognized that the appointment of individuals either as officers of the court or as other officers is not exclusively an executive function. In *People* v. *Morgan, supra,* this court held valid an act of the legislature authorizing the judges of the circuit court of Cook county to appoint the South Park Commissioners. It was there said of article 2 of the constitution of 1848, which is, in effect, the same as article 3 of the present constitution: "That provision declares only in general terms that each department of the government shall be confined to the exercise of functions of its own department. It does not undertake to define in any specific manner what are legislative, executive or judicial powers or acts. * * * We find no provision that declares that the appointment of a municipal officer, however extensive his powers, is the exercise of a legislative or executive power."

Much discussion appears in the briefs in this case as to the holding in the case of *People* v. *Hoffman,* 116 Ill. 587, it being contended that the question as to the right of the legislature to confer jurisdiction on the county court to punish judges and clerks for contempt was not there considered. While it is true that case was a *quo warranto* proceeding and the question of punishment of judges and clerks of an election was not directly involved, yet the principle which underlies the right of the county court to inflict punishment for contempt in such cases was involved. That principle is the power of the legislature to confer on

the county court, as a part of the judicial department of government, jurisdiction to supervise elections and appoint election commissioners and judges and clerks of elections as officers of that court. Such power being sustained, the power to punish for contempt for misbehavior in the discharge of the court's business is inherent in the court. (*People* v. *Peters,* 305 Ill. 223.) In the *Hoffman case* it was very clearly held that the legislature has the power, under section 18 of article 6 of the constitution, to confer on the county court jurisdiction of the supervision of elections and to constitute judges and clerks of elections officers of that court. It was there urged that these duties are ministerial and belong to the executive department of the government or political branch, but it was held otherwise. It was also held that the legislature has power to clothe the county court with authority to administer the Election law and see that it is obeyed, and that the judges and clerks were made officers of the court, and the constitutionality of the act was sustained. In *Sherman* v. *People, supra,* section 13 of article 2 of the act was attacked on the ground that the legislature cannot confer on the county court jurisdiction to supervise elections. That was a contempt proceeding. The power was there sustained.

The argument here is that the language of section 18 of article 6 of the constitution conferring on the county court "such other jurisdiction as may be provided for by general law," refers only to judicial matters, and that the word "jurisdiction" must be construed as limited to those matters. Judicial power is that which adjudicates upon and protects the rights and interests of individual citizens and to that end construes and applies the law. (*Owners of Lands* v. *People,* 113 Ill. 296.) Article 3 of the constitution prohibits any person or persons of one department exercising any power properly belonging to either of the other departments, "except as hereinafter expressly directed or permitted." Clearly, it could not mean that the

legislature can confer on the county court jurisdiction only of those matters which involve a trial of controverted questions under established rules of procedure, for section 18 expressly gives the court, by designation, jurisdiction over matters not of that character. For example, supervision of the matter of apprentices cannot be considered a judicial matter in the sense of adjudicating lawsuits, yet by that section county courts are given jurisdiction to supervise apprentices, and by the act on apprentices it is authorized to hear complaints as to treatment accorded the apprentice and the food, raiment and lodging given him, and may discharge the apprentice from his apprenticeship and may punish the one to whom such minor is bound. Jurisdiction, as applied to courts, is the legal power to interpret and administer the law in the premises. The honest conduct of elections is of most vital concern to representative government. The legislature may well have considered that punishment for the infraction of election laws by criminal prosecution may not so well secure the protection of the ballot as it can be and is secured by placing the entire conduct of elections under the jurisdiction of a court. While this pertains to the wisdom rather than the validity of the City Election law, yet it is plainly a purpose of government that the legislature shall enact laws to secure the honest conduct of elections. There appears no more logical reason for arguing that the supervision of elections may not properly be placed within the jurisdiction of the judicial department than to so argue concerning the settlement of estates, apprenticeships or receiverships. A perusal of the statute shows that the jurisdiction of the county court has by frequent acts been extended to such matters as the removal of county seats, (Cahill's Stat. 1927, chap. 34, par. 105;) contests of elections, (chap. 46, par. 111;) jurisdiction relating to insolvent debtors, (chap. 72, sec. 4, p. 1417;) adoption of children, (chap. 4, p. 72;) trial of rights of property, (chap. 77, p. 1548;) formation of

drainage districts, (chap. 42, sec. 2;) park districts, (chap. 105, sec. 296;) villages, (chap. 24, sec. 257;) mosquito abatement districts, (chap. 65a, sec. 89;) appointment of miners' examining boards, (Hurd's Rev. Stat. 1909, p. 1515;) and numerous other special jurisdictions. The following cases sustain acts conferring such powers: *People* v. *Evans,* 247 Ill. 547; *People* v. *Chetlain,* 219 id. 248; *Sherman* v. *People, supra; People* v. *Raymond,* 186 Ill. 407; *People* v. *Loeffler,* 175 id. 585; *People* v. *Morgan, supra; Shaw* v. *Hill,* 67 Ill. 455.

While the government of political parties is a political matter, and courts may not, in the absence of constitutional or legislative authority, interfere therewith, (*Dickey* v. *Reed,* 78 Ill. 261,) securing the honest conduct of elections is not a political but a governmental function, which the interest of good government requires shall be placed under supervision. That such supervision may be by the legislature placed in the judicial department finds solid foundation not only in the necessities and importance of the matter but in the construction of judicial powers long recognized and established in this State and in nowise prohibited by constitutional enactment. There is no provision in the constitution prohibiting the legislature from empowering courts to exercise supervision over such functions of government. (*People* v. *Morgan, supra.*) Reading together the final clause of article 3 of the constitution, "except as hereinafter expressly directed or permitted," and section 18 of article 6 of that instrument, it seems clear that the power given to the legislature by section 18 to confer on the county court jurisdiction of matters there enumerated which are not strictly judicial, and such other jurisdiction as that body shall by general law provide, comes within the express permission contemplated by article 3 of the constitution. We are of the opinion, therefore, that this act is not open to the objection that the legislature may not confer this jurisdiction on the county courts. *People* v. *Simon,*

176 Ill. 165; *Donahue* v. *Will County*, 100 id. 94; *Dodge* v. *Cole*, 97 id. 338.

Counsel for plaintiffs in error argue as their third proposition that contempt is a judicial matter; that the power to punish for contempt is inherent in courts, and that the legislature has no authority or power to legislate on the subject or to say what shall be contempt or to provide a procedure therefor. That question has never been directly considered by this court. In *Puterbaugh* v. *Smith*, 131 Ill. 199, a statute conferring on the circuit court power to punish for contempt any person who refuses to appear before a notary public and give his deposition in obedience to a subpœna issued by such notary was held invalid, since the contempt was directed not against the court but against the notary. It was there held that the legislature cannot make punishable as a contempt that which cannot in the nature of things be a contempt of the authority imposing the punishment. That case can have no application here, as the county court is given jurisdiction to supervise the honest conduct of elections, and judges and clerks who are appointed by that court are officers thereof. Their misconduct, therefore, is the misconduct of officers of the county court. The rule long established both at common law and in equity is, that the legislature may not restrict the jurisdiction of the court in contempt proceedings but the power to punish for contempt is inherent in the court. (*State of Illinois* v. *Froelich*, 316 Ill. 77; *People* v. *Panchire*, 311 id. 622.) It has been generally held, however, that the legislature may aid the jurisdiction or enlarge the powers of the court by declaring certain improper conduct to be a contempt of court though the same had not been theretofore so regarded, (6 R. C. L. p. 525,) although it has no power to make that a contempt which in the nature of things cannot be a contempt, (*Puterbaugh* v. *Smith*, *supra*,) or to punish crimes as such by contempt proceedings. In *Cheadle*

v. *State,* 110 Ind. 301, 11 N. E. 426, it was held that the legislature may aid the jurisdiction of courts by declaring certain improper conduct to be contempt not theretofore so regarded. It was likewise so held in *In re Clayton,* 59 Conn. 510, 21 Atl. 1005. In *In re Robinson,* 117 N. C. 533, 23 S. E. 453, and in *Carter* v. *Commonwealth,* 96 Va. 791, 32 S. E. 780, it was held that the legislature may regulate the practice in proceedings for contempt in cases of such extended jurisdiction. This we believe to be a sound rule. Section 13 of article 2 of the City Election law has made judges and clerks of election officers of the county court and has provided methods of procedure against them for misbehavior in office. The power to punish for contempt is not limited strictly to those matters which offend the dignity of the court or constitute abuses of its process. It has long been recognized that courts have power to punish for contempt, in certain cases, administrators, executors, guardians, masters in chancery, reporters, sheriffs, bailiffs, clerks, jurors, witnesses, attorneys and receivers. Some of the duties of these officers are merely ministerial and they are charged with no duties that are judicial in their character, yet where the court appoints officers to act with reference to the subject matter committed to it for administration it is necessary that these officers be concerned with the judicial conduct of the court and hence guilty for violation of their duties in relation to the same. (*Sherman* v. *People, supra.*) The election judges and clerks are expressly made officers of the court. They are commissioned by the court, and they are properly held liable in summary punishment for misconduct in office.

While it was a general rule at common law, in cases of criminal contempt, that the answer of the respondent under oath purges him of contempt, (*People* v. *McDonald,* 314 Ill. 548,) yet the contempt here considered cannot be said to be a criminal contempt as that term was understood at common law. (*People* v. *Panchire, supra; Hake* v. *Peo-*

*ple,* 230 Ill. 174; *O'Brien* v. *People,* 216 id. 354; *Buck* v. *Buck,* 60 id. 105; *People* v. *Diedrich,* 141 id. 665.) That the court has power to punish its officers cannot be doubted, and where the legislative act, as in the instant case, is one regulating the procedure before the court, the fact that it changes the procedure as it existed at common law does not render it invalid. The act providing procedure in this case is in aid, and not in limitation, of the inherent power of the court to adjudge for contempt, and the legislature in enacting it cannot be said to be trespassing upon the province of the judiciary. The method of procedure prescribed is that the cause shall be "tried in open court on oral testimony in a summary way, without formal pleadings." Under this provision it is not sufficient to purge a respondent that he file a sworn answer denying the charges of misconduct. It will be readily understood that a hearing of testimony is frequently necessary to secure the effective application of the remedy provided by the act. Had the respondents in the instant cases been permitted to purge themselves by their sworn answers the result would have been to render the court powerless to punish its officers for misbehavior in office. Sworn answers were filed denying the acts of misbehavior charged, yet on a hearing the evidence justified the finding that they committed the acts charged in the petition for rule to show cause. While the legislature may not limit the exercise of those powers of the court generally recognized as inherent, no objection is seen to a procedural regulation in aid of such extended powers as are conferred by the legislature.

Plaintiffs in error also contend that judges and clerks of election cannot be considered officers of the county court for the reason that the county court does not appoint them. As we have seen, section 13 of article 2 of the City Election law provides that the appointment of judges and clerks of elections shall be by order of the county court on nomination of the election commissioners. A commission is is-

sued to them under the seal of the court. They thus are appointed by an order of the county court and thus become officers of that court.

It is further urged that since by this act it is provided that the election commissioners may remove judges and clerks of election for cause the law is invalid. It is a sufficient answer to this contention to say that there is no attempt in this proceeding to remove plaintiffs in error as judges and clerks of election, and that question is not here.

We are of the opinion that section 13 of article 2 of the City Election law is not open to the objections urged, and the former decisions of this court on that matter are again re-affirmed.

The judgment of the county court in each of these cases is therefore affirmed. *Judgments affirmed.*

FARMER and DUNN, JJ., dissenting.