People of the State of Illinois ex rel. John S. Rusch, Appellee, v. Anderson Williams et al., Appellants.

Gen. No. 39,390.

Opinion filed November 8, 1937. Rehearing denied November 22, 1937.

THOMAS MARSHALL, of Chicago, for appellants.

THOMAS J. COURTNEY, State's Attorney, for appellee; JOHN F. CASHEN, JR., of Chicago, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Defendants were judges in the 37th precinct of the 20th ward in the city of Chicago in a primary election held April 14, 1936; proceedings were commenced charging them with misconduct as such judges and seeking to hold them in contempt of court based on sec. 13 of art. 2 of the election law, ch. 46, ¶ 267, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 43.277; after hearing they were adjudged guilty and each was sentenced to imprisonment in the county jail of Cook county for one year; they have appealed.

The trial court found that as judges of this election they had (1) permitted ballots to be cast in the names of persons who did not appear at the polling place and who did not vote. (2) Permitted one judge only to go into booth to assist voters. (3) Permitted persons to vote whose names were erased from the general register. (4) Permitted persons other than respondents to count and record ballots. (5) Made a false canvass.

Defendants say there was no convincing evidence to support these findings.

As to the first finding, 10 persons testified that they did not vote, although their names appeared in the poll books as voting; one of these persons was Jim Cole, but all of the defendants testified that they knew him personally and that in fact he did vote; that as to the other persons they had no recollection; that they did not know the persons registered and did not know the persons who claimed to be entitled to vote under the names of those not voting. Defendants say they did not knowingly allow anyone to vote who was not entitled to vote.

As to the finding that defendants permitted one judge instead of two, as required by law, to go into the voting booth to assist voters, the evidence is conflicting and unsatisfactory. A watcher, Edward Friedman, testified that this was done in 15 or 20 cases. This is denied by defendants. Another watcher, Herman Getner, testified tending to support defendants in this respect. He said that "one of the judges and one of the clerks" went into the booths to assist voters.

It seems to have been through inadvertence that two persons were permitted to vote whose names had been erased from the register. There was a great deal of disturbance in the polling place; 485 persons voted, which one of the witnesses described as consisting of 98 per cent colored voters of the "lower class," and many of them "half drunk"; that some of the voters would call the name right and get the address wrong;

that there was a great deal of noise so that it was almost impossible to hear. It also appears that the voting population is not permanent but moves frequently from place to place. We are of the opinion that as to the alleged misconduct on the part of the election judges, as above described, the evidence was not sufficient to justify the finding of guilty. Under all the untoward circumstances the errors in this respect could occur without the knowledge of the judges or any intention to be guilty of misconduct.

The findings that the judges permitted persons other than the officials to count and record the ballots and that a false canvass was made are supported by more convincing evidence. The ballots were opened by the court and canvassed. While the results shown by the official canvass of the principal officers and that shown by the recount by the court show some discrepancies, they are not so glaring as to prove intentional wrong doing. The differences run from one vote for one office to seven for another. Any difference between the official returns and recount votes could be ascribed to unintentional errors in the counting.

However, when we examine the vote on the municipal court judges we find striking differences. The evidence shows that the canvass of the votes was commenced late in the day or in the early hours of the following morning; the judges and clerks were on duty since 6 a. m. the day of the primary election and worked until 3 or 4 (one of the witnesses said 5) o'clock of the morning of the following day. About 2:30 o'clock in the morning the canvass for the municipal court judges began, and there is evidence that at this time the judges took a spell off to rest. Defendant Mrs. Sockel testified that she got tired "and did lie down late in the evening."

At this time the precinct captain, Bert Lowe, and another, an outsider named Maurie Epstein, apparently relieved the judges in counting the ballots for

municipal court judges. Although this is denied by defendants, yet the recounts of these ballots show such discrepancies as to indicate that there was something wrong. The official returns and recount of the ballots for all the other officers voted for at this time showed no differences of any importance, yet the votes for the municipal judges show striking discrepancies. For instance, candidate Fisher was credited with 102 votes but on the recount he had only 26; Lowitz was given 104, but the recount showed he actually received only 15 votes; Brooks gained 36 votes; Green 38. The votes for a number of other candidates show a marked difference between the official returns and the recount. Further evidence that toward the latter part of the counting of the ballots the judges were remiss is shown on the returns of the proposition vote. One of the watchers testified that about 3:30 in the morning of the day following the election; they began to count the special proposition ballots, and one of the clerks said, "We know about how many votes are in it, there is no necessity to count them." The figures returned by the officials on this vote were, "Yes"—421, "No"—61. The recount showed, "Yes"—201, "No"—51. This discrepancy of 220 "Yes" votes tends to support the charge that the "Yes" votes were not counted but only guessed at.

Counsel for defendants is correct in saying that this special proposition election was not included in the contempt petition, which charges misconduct with reference to votes for candidates for the nomination by political parties.

Defendants denied that any outsider participated in counting the ballots for the municipal court judges and also claimed that they counted the votes for the special proposition. The glaring discrepancies in the votes for municipal court judges and in the special proposition is convincing evidence that toward the end of a

long and tiring day the judges were derelict with reference to counting the ballots cast.

Counsel for defendants make a number of points with reference to the validity of the proceedings and of the statute. It is sufficient to say that these points have already been considered and passed upon adversely to defendants' contentions in a number of cases. *Sherman v. People,* 210 Ill. 552; *People v. Blackwell,* 342 Ill. 223; *Catherwood v. Morris,* 360 Ill. 473, 479; *People v. Enger,* 364 Ill. 464.

It is also argued that the trial court should have granted defendants' prayer for a change of venue. The point is without merit. Sec. 13, art. 2 of the Elections Act, Ill. State Bar Stats. 1935, ch. 46, ¶ 267; Jones Ill. Stats. Ann. 43.277, makes judges and clerks of election officers of the county court, and as such liable in a proceeding for contempt for any misbehavior in their offices. We do not understand how there could be any change of venue from the court trying its own officers for contempt.

Complaint is made of the opening of the envelopes containing the ballots by the State's attorney's office. There is no evidence that there was any change made, and it is shown that the ballots and other papers were returned unchanged to the envelopes.

It is also said that the trial court had no authority to recount the ballots as the proceedings contemplate a hearing "on oral testimony" exclusively. We do not read the statute as limiting the character of evidence which may be submitted in this proceeding. It is self-evident that the court must, in passing upon the charges, consider the tally sheets, ballots, or any other documentary or oral evidence from which the court may determine the innocence or guilt of the parties accused.

The last point made is that the sentence of one year in jail is excessive. All the defendants, apparently,

are honest, law-abiding citizens, and they testified that they did not knowingly do anything improper or illegal in the performance of their duties. The mistakes above referred to were apparently caused by the physical exhaustion of defendants and especially of Mrs. Sockel. Under the present law the judges and clerks of elections must be at their post on election day at six o'clock in the morning, they must remain there all day, and until all the votes are canvassed, under most confusing surroundings and conditions of hardship. Such conditions strongly emphasize the necessity for providing two sets of officials in elections, one to conduct the election and the other to make the count. Fraud-proof voting machines would insure an accurate canvass of the votes cast.

However, physical disability is not a sufficient excuse for dereliction of duty, and while we are of the opinion that the one year sentence is excessive, yet there should be some punishment. We are of the opinion that a moderate fine, such as $50, would be sufficient punishment. As we said in *People ex rel. Rusch v. Matthiesen,* 286 Ill. App. 615 (Abst.), we would enter judgment in this court but probably have not the power. *Ash-Madden-Rae Co. v. International Ladies Garment Workers' Union,* 290 Ill. 301.

The judgment against the defendants is reversed and the cause remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

O'CONNOR, P. J., and MATCHETT, J., concur.