People of the State of Illinois ex rel. John S. Rusch,
Appellee, v. Henry Levin et al., Appellants.

Gen. No. 40,671.

Heard in the third division of this court for the first district at the April term, 1939. Original opinion filed October 25, 1939. Rehearing opinion filed and rehearing denied May 6, 1940.

MAYER GOLDBERG and HAROLD GINSBURG, both of Chicago, for appellants.

THOMAS J. COURTNEY, State's Attorney, for appellee; JOHN F. CASHEN, JR., of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the respondents, who were found guilty of contempt for misconduct and misbehavior as officers of the Cook county court. Henry Levin, one of the judges of election was sentenced to 18 months in the county jail. Minnie Hirsch and Lillian Rothstein, the other two judges, were each sentenced to six months in the county jail, and the two clerks of election, Bertha Schallman and Joseph Rosenfeld, were each sentenced to 90 days in the county jail.

At a primary election held in Chicago on April 12, 1938, the five respondents served as judges and clerks of election in the 35th precinct of the 24th ward. The proceedings were brought under section 17 of the primary law (Ill. Rev. Stat. 1937, ch. 46, par. 381 [Jones Ill. Stats. Ann. 43.400]). On September 1, 1938, a

petition was filed against the respondents, by leave of court, in the county court of Cook county by John S. Rusch, chief clerk of the board of election commissioners. The petition alleged that the respondents were guilty of various types of wilful and fraudulent misconduct and prayed that they show cause why they should not be adjudged guilty of contempt of court. On October 14, 1938, an amended petition was filed by leave of court, in which it is alleged that the respondents permitted five specific persons to vote who were not registered in the precinct; permitted one Jacob Chaiten to vote twice under two application numbers; used dummy tally sheets in the canvass, and recorded on the poll lists names and addresses of persons who did not vote. Further, it is charged that the respondents gave assistance to voters who did not request it, although the voters were able to read and write; did not examine the assisted voters to determine if they were illiterate and did not insist that voters needing assistance execute affidavits to that effect, and permitted one of the judges to go into the booth with voters who did not ask for assistance and to mark their ballots; permitted one judge to enter a booth with a voter and to mark his ballot without asking him the names of the candidates for whom he wished to vote; and further that one of the judges was permitted to assist a voter and not permit the voter to express his choice of candidates, but to mark the ballot according to his own desire, and the respondents were charged with making a false canvass and fraudulently certifying an incorrect total of votes cast to the board of election commissioners.

On October 20, 1938, the respondents filed a verified petition for change of venue. The prayer of the petition was denied. On October 24, 1938, the respondents filed a further verified petition alleging that the trial judge was disqualified from hearing the cause and praying for a change of venue. The prayer of this petition was denied. It is also contended that the court

had no jurisdiction to try and sentence the respondents for legal assistance to voters.

A trial was had before the county court from October 24, 1938, to December 15, 1938. The court heard the evidence of fifty-five witnesses, and all of the respondents testified in their own behalf. On December 15, the court entered a judgment order, from which this appeal is taken.

Several grounds have been urged that the order entered by the court was erroneous, one being that the court erred in denying the respondents' petition for a change of venue filed on October 20, 1938; and also in not holding himself disqualified from hearing the cause as alleged in respondents' petition filed October 24, 1938, and that the judgment is contrary to the evidence, and the punishment inflicted by the court is grossly excessive.

The first objection offered by the respondents is that the trial court erred in denying respondents' petition for a change of venue, and in not holding himself disqualified from hearing the cause as alleged in respondents' petition.

The question here is whether the respondents being tried in the county court of Cook county for contempt, in accordance with the provisions of par. 381, sec. 17, ch. 46 of the primary law [Ill. Rev. Stat. 1937; Jones Ill. Stats. Ann. 43.400], are entitled to a change of venue, and the respondents contend that cases of contempt under section 17 of the primary law are included within the statutory language of "any civil suit or proceeding in law or equity." (Ill. Rev. Stat. 1937, ch. 146, sec. 1 [Jones Ill. Stats. Ann. 107.316]); that therefore the respondents are entitled to a change of venue as a matter of right, provided they present their petition in due time and in proper form, and they further contend that the facts alleged in the petitions bring the case within the common law rule, and regardless of whether the respondents are entitled to a statutory change of venue they are entitled to have an

impartial trial; therefore, the trial court erred in denying the second petition for a change of venue.

In the case of *People v. White,* 334 Ill. 465, the Supreme Court passed upon several of the questions that have been called to our attention in the instant case, and we therefore quote the language used by the Supreme Court in this decision as follows: "The rule long established both at common law and in equity is, that the legislature may not restrict the jurisdiction of the court in contempt proceedings but the power to punish for contempt is inherent in the court. (*State of Illinois v. Froelich,* 316 Ill. 77; *People v. Panchire,* 311 id. 622.) It has been generally held, however, that the legislature may aid the jurisdiction or enlarge the powers of the court by declaring certain improper conduct to be a contempt of court though the same had not been theretofore so regarded, (6 R. C. L. p. 525,) although it has no power to make that a contempt which in the nature of things cannot be a contempt, (*Puterbaugh v. Smith,* 131 Ill. 199), or to punish crimes as such by contempt proceedings. In *Cheadle v. State,* 110 Ind. 301, 11 N. E. 426, it was held that the legislature may aid the jurisdiction of courts by declaring certain improper conduct to be contempt not theretofore so regarded. It was likewise so held *In re Clayton,* 59 Conn. 510, 21 Atl. 1005. In *In re Robinson,* 117 N. C. 533, 23 S. E. 453, and in *Carter v. Commonwealth,* 96 Va. 791, 32 S. E. 780, it was held that the legislature may regulate the practice in proceedings for contempt in cases of such extended jurisdiction. This we believe to be a sound rule. Section 13 of article 2 of the City Election law has made judges and clerks of election officers of the county court and has provided methods of procedure against them for misbehavior in office. The power to punish for contempt is not limited strictly to those matters which offend the dignity of the court or constitute abuses of its process. It has long been recognized that courts have power to punish for contempt, in certain cases, ad-

ministrators, executors, guardians, masters in chancery, reporters, sheriffs, bailiffs, clerks, jurors, witnesses, attorneys and receivers. Some of the duties of these officers are merely ministerial and they are charged with no duties that are judicial in their character, yet where the court appoints officers to act with reference to the subject matter committed to it for administration it is necessary that these officers be concerned with the judicial conduct of the court and hence guilty for violation of their duties in relation to the same. (*Sherman v. People,* 210 Ill. 552.) The election judges and clerks are expressly made officers of the court. They are commissioned by the court, and they are properly held liable in summary punishment for misconduct in office.

"While it was a general rule at common law, in cases of criminal contempt, that the answer of the respondent under oath purges him of contempt, (*People v. McDonald,* 314 Ill. 548,) yet the contempt here considered cannot be said to be a criminal contempt as that term was understood at common law. (*People v. Panchire,* 311 Ill. 622; *Hake v. People,* 230 Ill. 174; *O'Brien v. People,* 216 id. 354; *Buck v. Buck,* 60 id. 105; *People v. Diedrich,* 141 id. 665.) That the court has power to punish its officers cannot be doubted, and where the legislative act, as in the instant case, is one regulating the procedure before the court, the fact that it changes the procedure as it existed at common law does not render it invalid. The act providing procedure in this case is in aid, and not in limitation, of the inherent power of the court to adjudge for contempt, and the legislature in enacting it cannot be said to be trespassing upon the province of the judiciary. The method of procedure prescribed is that the cause shall be 'tried in open court on oral testimony in a summary way, without formal pleadings.' Under this provision it is not sufficient to purge a respondent that he file a sworn answer denying the charges of misconduct. It will be readily understood that a hearing of testimony

is frequently necessary to secure the effective application of the remedy provided by the act. Had the respondents in the instant cases been permitted to purge themselves by their sworn answers the result would have been to render the court powerless to punish its officers for misbehavior in office. Sworn answers were filed denying the acts of misbehavior charged, yet on a hearing the evidence justified the finding that they committed the acts charged in the petition for rule to show cause." See also *Sherman v. People,* 210 Ill. 552. So when we apply the reasoning of the court to the case before us, we find that the proceeding is not one that is controlled by the general rule at common law in cases of contempt. Therefore, as the court has indicated, the respondents by filing a sworn answer in the instant case do not purge themselves of the charge of contempt.

It is contended by the respondents that this being a criminal proceeding the case was not properly titled, and that it should have been entitled ex rel. the people. The case of *People v. Jilovsky,* 334 Ill. 536, was a proceeding charging certain named respondents with contempt for misbehavior in office as judges and clerks of election, and the first contention there made is that the proceeding was a criminal prosecution, and that by section 33 of article 6 of the constitution "all prosecutions shall be carried on in the name and by authority of the People of the State of Illinois, and conclude: against the peace and dignity of the same," and that since this proceeding lacked these requirements it is void. Then the court said, in part: "Contempts are not crimes within the meaning of the statute defining misdemeanors. (*People v. Panchire,* 311 Ill. 622.) Section 13 of article 2 of the City Election act (Cahill's Stat. 1927, p. 1143; Smith's Stat. 1927, p. 1224); expressly provides that the punishment of a judge or clerk of election for contempt of court shall not be a bar to a proceeding against such officer, criminally, for

any violation of the act. The particular constitutional provision has no application to a proceeding to punish for contempt. *People v. Panchire, supra; State of Illinois v. Froelich*, 316 Ill. 77.)'' So when we come to consider the opinions of the Supreme Court we find the court has indicated that a proceeding of the character before us is not, under the rule at common law, a criminal contempt proceeding, but is a proceeding provided for by statute. And, too, as indicated in the opinions, it is a fact that they may be properly chargeable with violation of the criminal code, still this is a proceeding provided for by statute, and it was for the court to determine from the evidence as to the question of guilt and as to fixing the punishment provided for by law, and it is controlled entirely by the statutory provisions—which we have cited—upon questions involved in contempt proceedings such as we are here considering.

As to respondents' contention that they are entitled to a change of venue as a matter of right and that the court erred in refusing to enter such an order, we have considered the subject in several cases. In *People ex rel. Rusch v. Williams*, 292 Ill. App. 228, which was a case in which judges of election were found guilty and punished in a contempt proceeding and on appeal the question of authority of the judge of the county court to deny their application for a change of venue, this court said:

''It is also argued that the trial court should have granted defendants' prayer for a change of venue. The point is without merit. Sec. 13, art. 2 of the Elections Act, Ill. State Bar Stats. 1935, ch. 46, ¶ 267; Jones Ill. Stats. Ann. 43.277, makes judges and clerks of election officers of the county court, and as such liable in a proceeding for contempt for any misbehavior in their offices. We do not understand how there could be any change of venue from the court trying its own officers for contempt.''

And then again in the case of *People ex rel. Rusch v. Savaiano,* 293 Ill. App. 515, this court said:

"The proceeding in this case, as stated by this court in *Rusch v. Williams,* 292 Ill. App. 228, is purely statutory. In the section of the act referred to, to wit: section 13, art. 2 of the Elections Act, Ill. State Bar Stats. 1935, ch. 46, ¶ 267; Jones Ill. Stats. Ann. 43.277, after providing for the manner of appointing judges and clerks of election, and the confirmation of their appointment by the county court, it is provided that: 'After confirmation and acceptance of such commission, such judges and clerks shall thereupon become officers of such court and shall be liable in a proceeding for contempt for any misbehavior in their office, to be tried in open court on oral testimony in a summary way, without formal proceedings, but such trial or punishment for contempt of court shall not be any bar to any proceedings against such officers, criminally, for any violation of this act.'

"In *Johnson v. Von Kettler,* 84 Ill. 315, the Supreme Court, in passing upon the question as to the jurisdiction and power of county courts, said: 'Power [of county courts] to imprison is a special, statutory power, and can be exercised only in the cases and in the manner specifically prescribed by the statute.'

"...

"In the case at bar, we are of the opinion that the contempt charged here is in the nature of a criminal contempt; that the purpose of the statute is that in case of its violation, the penalty provided may be imposed in order to vindicate the authority of the court with respect to matters connected with the holding of elections, and that it is distinguished from the class of cases where the proceeding is remedial. See *People v. White,* 334 Ill. 465. Also, our opinion is that the court was not in error in refusing to grant the change of venue."

It might be noted that the case of *People ex rel. Rusch v. Savaiano,* 292 Ill. App. 515, has been the

subject of criticism by the respondents, who state that this case is based on the assumption that this type of case involves criminal contempt. However, upon an examination of this authority we find that the writer of the opinion did not make any statement which might be considered to mean that the contempt case was a criminal contempt. On the contrary, the language used by the majority opinion is that it was in the "nature" of a criminal contempt, and not as has been suggested, a criminal contempt. It might be noted, too, that in that case upon a petition for leave to appeal the Supreme Court denied an appeal, so that the decision is final. Also *People ex rel. Rusch v. Freedman*, 297 Ill. App. 73; *People ex rel. Rusch v. Sulli*, 296 Ill. App. 639 (Abst.) were cases in which the question of change of venue was before this court, and the court decided that the county court did not err in denying a change of venue. From the order of this court the appeals were taken to the Supreme Court and the appeals were denied, so the opinions became final in those cases. In view of the decisions upon a like question before the court and the conclusion that there was no error in denying a change of venue, we believe that question has been settled and that nothing has been advanced which would justify a change of the rule that has been adopted by this court.

The next point made by the respondents is that the court had no jurisdiction to try and sentence the respondents for illegal assistance to voters, and that par. 313, sec. 24, ch. 46 (Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 43.201]) provides in part as follows: .

"Any person who secures or attempts to secure assistance in voting who is not physically disabled or illiterate as herein provided, or any election official who knowingly assists a person in voting contrary to the provisions of this section is guilty of a misdemeanor and upon conviction thereof, shall be fined not less than $200 nor more than $2,000 or imprisoned in the county jail for not less than 30 days nor more

than one year, or both.'' They further contend that section 17 of the primary law is a general statute applicable to all conceivable types of misbehavior at the polls. Section 24 of the Australian ballot law deals specifically with illegal assistance to voters. It defines the offense, states what constitutes illegal assistance, sets out under what circumstances assistance can legally be given to a voter, and prescribes a punishment for commission of the offense.

It is well to have in mind the provision of the primary election law, par. 412, sec. 48, ch. 46 [Ill. Rev. Stat. 1937; Jones Ill. Stats. Ann. 43.431], which also provides for assistance to voters, and is as follows:

''Any primary elector who may declare upon oath that he cannot read the English language, or that by reason of any physical disability he is unable to mark his ballot, shall, upon request, be assisted in marking his primary ballot in the same manner as provided by the general election laws of this state.'' and when we come to consider the provision that provides for such assistance we find in par. 313, sec. 24:

''Any voter who may declare upon oath that he cannot read the English language or that by reason of any physical disability he is unable to mark his ballot, shall, upon request, be assisted in marking his ballot, by two of the election officers of different political parties, to be selected from the judges and clerks of the precinct in which they are to act, to be designated by the judges of election of each precinct at the opening of the polls.'' The respondents in seeking to avoid the consequences of these provisions contend that the offense of rendering illegal assistance to voters is a misdemeanor, specifically created and defined by section 24 of the Australian ballot law, to which we have referred, and further contend that this offense cannot be punished under a statute which deals generally with any misbehavior, and as regards prosecution of respondents for committing a misdemeanor, these pro-

ceedings are fatally defective. They seek to point out the reasons they consider sufficient to prevent the court from punishing them for contempt, and suggest that the specific provisions of section 24 of this ballot law supersede the general provisions of section 17 of the primary law.

We are unable to agree with this theory, for the reason that the Primary Act specifically provides, as we have indicated, for the assistance to voters who bring themselves within the provisions of the act in order that they may receive assistance of the judges in marking their ballots; and further, it is not for violation of the provisions of this particular act, but a contempt proceeding is for misbehavior of judges and clerks of election, in that particular precinct, who are officials of the county court, in not rendering and performing such service as is required under the provisions of the act we have quoted, and as our Supreme Court has stated, the county court has power to punish these officials. Of course, the judges and clerks may be punished for a criminal violation, but this is not controlling in the instant case, as we have before indicated.

It is also contended by the respondents that the polling place used on the night in question was in a shoe repair shop and that it was not large enough for the purpose of carrying on this election in that precinct, and they point out the inconvenience they suffered by the selection of a place that was not fit for the purpose for which it was to be used on the day of the primary election. Of course that was a matter for the election commissioners to remedy, and if they selected a polling place which was not as convenient as it should be, that would not be a defense to an action of the kind here in this court. They are charged with contempt of court as judges and clerks of election for misbehavior as officers of the Cook county court. The question of misbehavior is a matter for this court to pass upon, and we must decide whether the election officials violated

the provisions of the general primary law, which provide for assistance to any voter who may declare upon oath that he cannot read the English language or that by reason of any physical disability he is unable to mark his ballot, and upon request, be assisted by two of the election officers, and the judge determine whether the voters who were assisted were able to read or whether they were afflicted with a physical disability which prevented them from properly marking their ballots.

It appears from the record that thirty-six witnesses were called and appeared, and that all of them could read and write, eight of whom were graduates of grammer school, fourteen had attended high school, seven of whom graduated and two of these attended college. Now all of these witnesses were assisted in marking their ballots, which was apparently in violation of the provisions of this act. All of the witnesses were according to the evidence, able to read the English language, and there is nothing from which we can determine to indicate that they were physically disabled and thereby prevented from marking their ballots. The judges and clerks of election apparently granted assistance, although it was not requested and did not come within the provisions of the act. Then again, there was a witness, Ida Feldman. She signed an application, and the respondents could not find her name on the list so she left the polling place and did not vote. However, it appears from the record that there was a ballot cast by a voter by that name. Morris Grossman a voter from 1551 South Lawndale avenue, where there were no living quarters, and who was not a registered voter from this precinct, was given assistance and one of the judges marked his ballot. He was permitted to vote. Upon a recount of the ballots cast there were discrepancies in the count for the Democratic candidates showing the difference between the ballots tallied by the judges and clerks, and a recount of the ballots cast was not tallied on the tally sheets. The judges

and clerks of election were occupied 29 hours in this service. Upon this evidence the court entered the findings of guilt against the respondents.

There is one other question we believe should be considered and that is whether the punishment fixed by the judge of the county court is excessive, and in considering this question we are to take into consideration that provision of the Bill of Rights, sec. 11 of art. II of the Constitution of 1870 [Jones Ill. Stats. Ann. Vol. I, p. 192], which provides that "All penalties shall be proportioned to the nature of the offense. . . ." and when we come to consider the punishment inflicted by the county court, we find that Henry Levin, one of the judges was sentenced to serve 18 months in the county jail, which punishment was greater than for a violation of the act providing for assistance to voters. Punishment for such criminal violation is not to exceed one year imprisonment, or a fine not to exceed $2,000, or both, and we believe under the circumstances in this case that such punishment was clearly excessive, in view of the provision of the statute which should have been taken into consideration in inflicting this punishment.

As to the two judges Minnie Hirsch and Lillian Rothstein, the punishment of six months in the county jail, since these persons bear a good reputation, is excessive, in view of all the facts and circumstances in the case, and this applies with equal force to the clerks of election, Bertha Schallman and Joseph Rosenfeld, who were sentenced to 90 days. While it is true the judge of the county court has the right to inflict punishment such as he believes is justified by the record, still this punishment was not proportioned to the acts charged.

This court said in *People ex rel. Rusch v. Williams,* 292 Ill. App. 228:

"However, physical disability is not a sufficient excuse for dereliction of duty, and while we are of the opinion that the one year sentence is excessive, yet

there should be some punishment. We are of the opinion that a moderate fine, such as $50, would be sufficient punishment. As was said in *People ex rel. Rusch v. Matthiesen*, 286 Ill. App. 615 (Abst.), we would enter judgment in this court but probably have not the power. *Ash-Madden Rae Co. v. International Ladies Garment Workers' Union*, 290 Ill. 301."

For the reasons stated the judgment is reversed and the cause is remanded to the court to enter such further order as may be consistent with the views we have expressed in this opinion.

*Reversed and remanded.*

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.

## ON REHEARING.

MR. JUSTICE BURKE delivered a separate opinion.

I am of the opinion that a rehearing should be granted. I agree that the judgment should be reversed and the cause remanded. The trial judge was a candidate for renomination at the primary wherein the respondents acted as judges and clerks. They are accused of fraud and misconduct in the performance of their duties, which alleged fraud and misconduct resulted in the trial judge being credited with a less number of votes than he would have received had the ballots been honestly voted, counted and tallied, and likewise resulted in his opponent being credited with a greater number of votes than he should have received. In view of the fact that the county judge was a candidate and of the charges made in the verified petition for a change of venue, I am of the opinion that it was his duty to grant a change of venue, or voluntarily to transfer the cause to another judge.